THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.*
.THE CANTON COMPANY OF BALTIMORE.

*Arbitration and Award—Interested arbitrator—Notice—
Burden of Proof—Laches.*

Where in a submission to arbitrators to determine the value of
property taken for a right of way, it is provided that their decision
shall be final, and binding upon both parties, an alleged ex-
cessiveness in the estimate, will not be reviewed on appeal, in the
absence of any charge or pretension that the arbitrators acted
fraudulently.

Where it is agreed to submit the determination of the amount to be
paid for a right of way " to some disinterested third party," and
two arbitrators are selected, one of whom is interested in being a
stockholder of one of the parties, their award will be cancelled and
set aside, unless the party who seeks to rescue it from condem-
nation shows that the person impeaching it had knowledge of that
disqualification before the award was signed, and either waived all
objection thereto, or acquiesced in the arbitrator's continuing to
act, even though disqualified.

The mentioning by the arbitrator of the fact of his being such stock-
holder, in the presence of a director of a party, when discussing
an entirely different transaction, is not notice to the party.

Where an award is impeached on the ground that one of the arbitrators
is directly interested in the result, the burden of proof is on the
party who maintains the validity of the award, to show that the
interested arbitrator was authorized to act.

The lapse of less than five months after the signing of the award
before the filing of a bill to set it aside, is not such an unreason-
able delay as to deprive the complainant of his right to relief,
where in the interval no rights of the one party have been impaired,
and no advantage has been gained by the other party, and where
no other remedy can be invoked.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a decree of the Court below (PHELPS, J.,) dismissing the bill of complaint. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*W. Irvine Cross,* and *John K. Cowen,* for the appellant.

*John L. Thomas, Charles Marshall,* and *S. Teackle Wallis,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

The Baltimore and Ohio Railroad Company needing for its right of way certain property owned by the Canton Company of Baltimore, a contract was entered into between the two companies on the twenty-fourth day of November, eighteen hundred and eighty-four, whereby the Canton Company agreed to grant to the railroad company a right of way, particularly described, and whereby it was provided that "if said parties hereto cannot agree as to value of said right of way, then the final decision of price to be paid shall be left to some disinterested third party, acceptable to both parties, who shall determine its value, and his decision shall be final and binding upon both parties hereto." The sum awarded was to bear interest at the rate of five per cent. per annum from December 1st, 1884. "Possession to be given to the Baltimore and Ohio Railroad Company of the land for the right of way above mentioned, as soon as the said company have furnished the Canton Company the plats showing the location of said right of way, but the adjustment of its value shall be determined at any date upon the request of the Canton Company."

Under this contract the railroad company took pos-
session of the land wanted for the right of way and
proceeded with the construction of its road.  There
seems to have been some difficulty in selecting an arbi-
trator, and after the lapse of many months a letter
dated December 28th, 1885, and signed by Mr. Spencer,
Vice-President of the railroad company, and by Mr.
Brooks, President of the Canton Company, was sent
to Mr. W. W. Spence and Mr. Robt. C. Hall, notifying,
them that they had been agreed upon as arbitrators.
Accompanying this letter and referred to in it was a
copy of the contract of November 24th, 1884.

For the purpose of carrying out this contract in so far
as it related to the ascertainment of the value of the
right of way, an agreement of submission was executed
by the two companies on May 26th, 1886; and by its
first paragraph W. W. Spence and Robert C. Hall were
duly appointed arbitrators.  By the fifth paragraph
it was provided that "said arbitrators, in ascertain-
ing the sums of money to be paid as aforesaid, shall
take into consideration the damages, if any, and also
the benefits, if any, to the remaining property of
the Canton Company not appropriated as aforesaid,
and be governed in the assessment of said damages
and benefits by the charters of said companies, and
the law of the land applicable to eminent domain.
Questions of law and fact in the assignment of said
damages and benefits are to be determined by the said
arbitrators."

The arbitrators after hearing testimony made their
award on the seventh of June, eighteen hundred and
eighty-six, fixing the amount to be paid by the rail-
road company to the Canton Company at one hundred
and forty thousand dollars with interest, at the rate
of five per cent. per annum from December the first,
1884, pursuant to the contract of November 24th, 1884.

On October 28th, 1886, the railroad company filed a bill in the Circuit Court of Baltimore City against the Canton Company, asking an injunction to restrain the enforcement of the award, and seeking to have the award vacated and cancelled, upon the ground that Mr. Spence was at the time of his appointment as an arbitrator, and whilst he acted as such, and when he signed the award, a stockholder of the Canton Company. The Canton Company answered, and a large volume of testimony was taken. The Circuit Court dismissed the bill, and the railroad company has brought the case here on appeal from that decree.

Much of the record is taken up with evidence bearing upon the alleged excessiveness of the award. But there is no charge or pretension that the arbitrators acted fraudulently in making their estimate; and under the broad terms of the submission any mere mistake of judgment on their part in assessing the damages cannot be reviewed by this Court. *Cromwell, et al. vs. Owings,* 6 *H. & J.*, 10; *Ebert's Ex'rs vs. Ebert's Adm'rs,* 5 *Md.*, 353. We are consequently not required to consider this branch of the case at all, and we proceed at once to examine the other questions presented.

It is not denied that Mr. Spence was, whilst he acted as an arbitrator, the owner of several hundred shares of the Canton Company's capital stock.

It is a maxim of every code, in every country, that no man should be judge in his own case. The learned wisdom of enlightened nations and the unlettered ideas of ruder societies, are in full accordance upon this point, and wherever tribunals of justice have existed, all men have agreed that a Judge shall never have the power to decide where he is himself a party. In England it has always been held that, however comprehensive may be the terms by which jurisdiction is conferred upon a Judge, the power to decide his own case

Balto. & Ohio R. R. Co. *vs.* Canton Co.

is always a tacit exception to the authority of his office. It is not left to the discretion of a Judge, or to his sense of decency, to decide whether he shall act or not; all his powers are subject to this absolute limitation; and when his own rights are in question, he has no authority to determine the cause. *The Wash. Ins. Co. vs. Price,* 1 *Hopk. Ch. R.,* (*N. Y.,*) 1; *Peninsular Railway Co. vs. Howard,* 20 *Mich.,* 18. It has accordingly been settled by the House of Lords that a judgment rendered by a Judge in a case in which he is interested is voidable. *Dimes vs. Prop. of the Grand Junc. Canal,* 3 *H. of L. Cases,* 759. This salutary principle, that no Judge shall decide his own case, is likewise applicable to an arbitrator; and any interest he may have in the subject-matter upon which he is selected to pass judgment will render his award, at least, voidable; unless the parties to the submission, having knowledge of his disqualification, waive the objection or preclude themselves by their acquiescence or laches from taking advantage of it. So fundamental is this doctrine which disqualifies an arbitrator who is interested, unless specially authorized to act, that it has even been regarded as an implied term or condition in every contract of submission that he shall be disinterested, when the contract itself is silent on the subject. *Pool vs. Hennessy,* 39 *Iowa,* 195.

By the original contract, dated November 24th, 1884, it was unequivocally provided that the ascertainment of the amount to be paid to the appellee for the right of way was to be left to a "disinterested third party." It is evident, therefore, that there was at that time no idea of submitting the question to a party so directly interested as a stockholder of either company. Many persons were suggested, but none seem to have been satisfactory to both sides. Finally, Mr. Hall was named, and Mr. Brooks agreed to accept him provided some one

of three other persons whom he mentioned should be associated with Mr. Hall. Mr. Spencer, who had charge of this matter, declined to accede to this proposal. Nothing further was done for some time. Mr. Brooks being in the office of Mr. Garrett on other business, called Mr. Garrett's attention to the delay in selecting arbitrators, and stated that he, Mr. Brooks, was willing to accept Mr. Hall provided Mr. Spence should be associated with him; but that Mr. Spencer had declined to consent to this. Mr. Garrett then sent for Mr. Spencer, and after a few moments private consultation with him, announced to Mr. Brooks that the railroad company would agree to his proposal. It was then suggested that a joint letter be written by Mr. Spencer and Mr. Brooks to Mr. Spence and Mr. Hall notifying them of their appointment. This letter, as we have already stated, was written and sent. The agreement of May 26th, 1886, was subsequently made "for the purpose of carrying out said agreement" of November 24th, 1884. Mr. Garrett and Mr. Spencer have both emphatically testified that when they agreed to the appointment of Mr. Spence, and when the agreement of submission was executed, they had no knowledge or information whatever that Mr. Spence was interested in the stock of either company. They have further testified that they never meant to assent to the appointment of an interested arbitrator. On the other hand, Mr. Brooks admits that he knew Mr. Spence was a stockholder of the Canton Company at the time he suggested his appointment.

It is thus perfectly manifest that up to this point in the transactions neither Mr. Garrett nor Mr. Spencer knew of Mr. Spence's interest, and it is not pretended that any other officer of the railroad company was aware thereof. It is true Mr. Spence himself says that more than a year before, and when discussing a

totally different business transaction, he mentioned the fact of his being a stockholder of the Canton Company in the presence of Mr. Burns, one of the directors of the railroad company, and the chairman of its finance committee. But this was not notice to the railroad company. *The United States Ins. Co. vs. Shriver, et al.,* 3 *Md. Ch. Dec.,* 381.

On the ground of sound public policy, and because, as observed by Lord COKE, it is against natural justice that a person should act as a judge in his own case, strong, convincing and indisputable evidence ought to. be produced to show that a party who believed he was submitting his cause to a disinterrested arbitrator, subsequently discovered the arbitrator's direct interest, and then waived the objection. We were not referred during the argument to any adjudged case distinctly deciding whether, when an award is impeached as this one is, the burden of proof rests upon the party who assails it to show that he continued in ignorance of the arbitrator's disqualification until after the award had been given ; or whether it is on the opposite party to show that he who attacks the award had knowledge of such disqualification before the award was made. When an award, given under a submission, which expressly provides for the appointment of a *disinterested* arbitrator, is shown to have been made by one who is directly interested in the result, it would seem quite clear, upon principle, that it must be cancelled and set aside, unless the party who seeks to rescue it from condemnation shows that the person impeaching it had knowledge of that disqualification, before the award was signed, and either waived all objection or acquiesced in that departure from the terms of the contract of submission. This should be the rule as to the burden of proof where the submission distinctly provides for a *disinterested* arbitrator. Any modification of that

agreement whereby an interested person is substituted, ought to be shown by the party who claims the award to be valid, though made by one not competent, under the contract, to sit at all.   This is reasonable, because a party has the right to insist on the strict performance of a contract as it is written, unless the adverse party can show, by competent evidence, a waiver of its terms. In *Porter vs. Still,* 63 *Miss.,* 357, it was held that the party on whom the burden of proof in any case rests, may be determined by considering which would succeed if no evidence were offered by either side, and by examining what would be the effect of striking out of the record the allegation to be proved.   The *onus* must be on the party who, under such tests, would fail in the suit.   Substantially the same rule is laid down in *Stephens' Digest of the Law of Evidence, page* 144.   The policy of the law, as we have seen, is hostile to any one sitting as a judge in his own case.   If no evidence had been adduced except that which established the disqualification of Mr. Spence, and the appellant's ignorance of that disqualification at the time the contract of submission was executed; would not the award, of necessity, fall?   "If parties really intend to have their rights decided by impartial judges, they are entitled to insist that each and all of them be impartial." *Strong vs. Strong,* 9 *Cush.,* 573.   Undoubtedly, then, the burden would be on the party relying upon the award to show that it is valid, notwithstanding the interest of one of the arbitrators.   This could only be done by showing that the appellant subsequently learned of that interest, but waived all objection thereto, or acquiesced in the arbitrator's continuing to act, even though disqualified.

Some authorities support the proposition that, when an act is by the common law or by statute generally unlawful, unless specially authorized, the presumption,

whenever the question of authority arises, is, that it does not exist, which presumption supports the negative allegation, and that it is for the person doing the act to show his authority. *Bliss vs. Brainard*, 41 *N. H.*, 256; *Wheat vs. State*, 6 *Mo.*, 455; *Solomon vs. Dreschler*, 4 *Minn.*, 278; *Welsh vs. State*, 11 *Texas*, 368.

This proposition though not identical with, is analogous to, the question now being considered. Here the controversy as to the amount to be paid for the right of way was agreed to be submitted for decision to a *"disinterested third party."* It was, therefore, not lawful for one who was pecuniarily interested in the result to act, unless specially authorized. The question of his authority has been directly raised. The obvious presumption is, that no such authority existed; and that presumption, according to the cases cited, supports the negative allegations of the bill. It irresistibly follows that it is for the party who claims the award to be valid, under this state of facts, to show the circumstance which makes it so—that is, to show that the interested arbitrator was authorized to act.

The cases relied on by the appellee are not, in our opinion, applicable. In actions for deceit the plaintiff is required to prove not only the fraudulent representations, but also that he was misled by them, and that he would not have entered into the contract had they not been made. In other words, he must show the materiality of such representations, that they were false, and that he has been injured by them. *McAleer vs. Horsey*, 35 *Md.*, 452; 2 *Addison on Torts, sec.* 1174. But this is not the case before us. The award is not attacked because the appellant was induced by fraud, misrepresentation or concealment to enter into a contract of submission, but because one of the arbitrators was disqualified, and was incompetent by reason of interest, to make any award whatever.

The only evidence on the subject of the appellant's knowledge as to Mr. Spence's interest is to be found in the testimony of Mr. Garrett and of Mr. Spencer. Mr. Garrett has testified that he never heard of Mr. Spence's interest in the Canton Company until a day or two after the award had been made public. Mr. Spencer, in his examination-in-chief, was asked whether he knew at the time Mr. Spence was agreed on that he was interested, and he replied that he did not. Upon his cross-examination he was asked when he first heard of it; and he stated that a rumor to that effect reached him shortly prior to his having testified before the arbitrators. Later he came back to the witness stand for the purpose of making a correction, and then stated that his former testimony fixing the time when the rumor of Mr. Spence's interest first reached him was erroneous—that, in fact, he heard the rumor for the first time on June 27th, nearly three weeks *after* the award had been given. He fully explained how he had fallen into the error, and gave the circumstances which enabled him to fix the correct date. His explanation seems perfectly reasonable, and we see nothing in the record to warrant us in discrediting his statement, and practically convicting him of perjury. He gave the name of the gentleman from whom he heard the rumor, and he stated that his error arose from mistaking the date of the first visit he made to that gentleman's country home, where the rumor was communicated to him. This rumor, which Mr. Spencer inaccurately stated he had heard prior to giving his testimony before the arbitrators, is the only evidence in the record tending to show that the appellant company had any notice of the disqualification of Mr. Spence. There is nothing to indicate that any officer of the railroad company had any information or knowledge whatever of the interest of one of the arbitrators in the stock of

the Canton Company, until after the award had been made and signed, and, in fact, published in the daily press; except, as we have already stated, what was mentioned in the presence of Mr. Burns.

As acquiescence necessarily presupposes knowledge on the part of the person acquiescing, and as the railroad company has not been shown to have had any knowledge of Mr. Spence's interest, our conclusion is that there was no acquiescence by the company in Mr. Spence's acting, notwithstanding his interest. And there was, for the same reason, no waiver of his disqualification.

We are now brought to the only other question in the case and that is the question of laches. It has been insisted that the railroad company has been guilty of unreasonable delay in filing its bill of complaint, and that consequently it is now without remedy. This Court has recently said in *Robertson, et al. vs. Mowell, et al.*, 66 *Md.*, 539, when speaking of laches, that "Courts have wisely abstained from attempting to lay down any general or inflexible rule to govern all cases. As was said in *Glenn vs. Hebb*, 17 *Md.*, 260, when questions of this kind arise in Courts of equity it is a sound maxim that each case is to be determined according to its own facts." And Sir Barnes Peacock in *The Lindsay Petroleum Co. vs. Hurd, L. R.*, 5 *Privy Council App.*, 221, observed: "Now the doctrine of laches in Courts of equity is not an arbitrary or a technical doctrine. * * * * But in every case, if an argument against relief, which otherwise would be just, is founded on mere delay, that delay of course not amounting to a bar by any statute of limitations, the validity of that defence must be tried upon principles substantially equitable. Two circumstances, always important in such cases, are the length of the delay and the nature of the acts done during the interval, which might affect

either party and cause a balance of justice or injustice in taking the one course or the other, so far as relates to the remedy." Now, the award was signed on June the seventh, eighteen hundred and eighty-six, and the bill was filed October the twenty-eighth of the same year; and the question is whether this was such an unreasonable delay as to deprive the appellant of relief? It must not be forgotten that the railroad company took possession of the property (except a small portion of it) under the agreement of November 24th, 1884, considerably more than a year before the contract of submission was drawn; and that no acts of any kind were done after the date of the award, and before the filing of the bill, which affected either party or changed, in the slightest degree, their relative situations. No rights of the Canton Company have been impaired by this delay of four months and twenty days, and no advantage has been gained by the railroad company. The parties stood during that whole period of time precisely as they did on June the seventh. Nothing intervened to make it less just to grant the relief on October 28th, 1886, than it would have been to accord it three months earlier. And the record does not disclose that the appellee had acquired, when the bill was filed, any equities against the relief sought, which were superior to or even different from those it possessed immediately upon the award being made. Why then should this delay be a bar to the remedy? The only reason suggested is the one to be found in the opinion of the learned Judge of the Circuit Court. The effect of what is there stated is, that equity, in the absence of a statutory limitation, will, by analogy, refuse relief to a suitor who invokes its aid in such a case as this, unless he files his bill within such period of time as may be allowed by law for applying some other remedy in some other and different proceeding. It has

been repeatedly held that, upon the principle of analogy, the Court will apply express statutory restrictions in regard to time, to cases of similar character where no such express legislative provisions exist. Thus the Act of 1826, ch. 200, sec. 14, provided that appeals from a decree in the Court of Chancery must be prosecuted within nine months from the date of the decree; and in *Oliver vs. Palmer & Hamilton*, 11 *G. & J.*, 137, where a party was seeking to set aside a decree on the ground of mistake, it was held that he must file his bill for relief within nine months after knowledge of the mistake, that being the time limited for appeals. This principle has been also recognized in *Berrett vs. Oliver*, 7 *G. & J.*, 207; *Stocksdale vs. Conaway*, 14 *Md.*, 107; *Redman vs. Chance*, 32 *Md.*, 52, and other cases. This is just and equitable, but it presupposes the existence of some other direct, appropriate remedy. By analogy the exercise of the one not limited is restricted to the same length of time within which the other must be exerted. But it by no means follows that a period, fixed by law, within which an appeal may be taken from a decree of a Court of equity to this Court, is to be adopted as an arbitrary and inflexible limit within which the assertion of a totally different right must be made. There is no analogy whatever between appealing from a decree of a Court of equity and filing a bill to vacate an award. In a case like this where the only remedy was the one invoked, and where no other proceeding was open to the appellant, all the circumstances must be considered and the relief will be granted if the balance be in favor of the justice of the application, provided sufficient time has not elapsed to make it inequitable to disturb the award. The mere lapse of less than five months without the concurrence of other causes will not constitute laches in this or in any other precisely similar case. There are no circum-

stances proved in the case which make it unjust for the
appellant to invoke the aid of a Court of equity.   The
annulment of the award will not disturb the contract
of November 24th, 1884; and the railroad company, by
reason of its occupancy of the land, continues liable to
the Canton Company under the terms of that contract,
for five per cent. interest from December 1st, 1884, on
the amount of any award which may be made.

Being, for the reasons stated, of opinion that the
appellant *is* entitled *to the relief* sought in its bill,
the decree will be reversed and the cause will be re-
manded that a decree may be passed in conformity
with the views we have expressed and the conclusion
we have reached.

> *Decree reversed, and*
> *cause remanded.*

(Decided 27th March, 1889.)