584 A.2d 689

STATE OF MARYLAND CENTRAL COLLECTION UNIT

v.

Norton I. GETTES.

No. 27, Sept. Term, 1990.

Court of Appeals of Maryland.

Jan. 23, 1991.

672

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Norman E. Johnson, Asst. Atty. Gen., Baltimore), on brief, for petitioner.

Constance D. Burton (E. Dale Adkins, III, Barbara McC. Stanley, Anderson, Coe & King, Baltimore), on brief, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

RODOWSKY, Judge.

This District Court collection case is an offshoot of a Health Care Malpractice Claims Act case. At issue is liability for arbitration costs. The panel assessed part of the arbitration costs against, and the State of Maryland now seeks to collect those costs from, the party who prevailed on the merits in arbitration, who later prevailed on the merits in the adversary's action to nullify, but who did not seek any form of direct judicial review of the panel's adverse award of partial costs. As we explain below, the State may recover the costs in this action.

The respondent, Norton I. Gettes, M.D., is a health care provider. One of his patients filed and arbitrated a claim against him pursuant to the Maryland Health Care Malpractice Claims Act (the Act), Md.Code (1974, 1989 Repl.Vol., 1990 Cum.Supp.), §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article (CJ).[1] The arbitration panel rendered its decision on a preprinted form containing three sections, one section each for liability, damages, and costs. As to liability, the panel found in favor of Dr. Gettes so that no damages were awarded. In the costs section of the form the panel inserted: "[T]o be equally divided between the parties." No amount of costs was inserted. The Health Claims Arbitration Office (HCAO) subsequently determined that each party to the arbitration was to pay $810.66 in costs.

The claimant timely gave notice of rejection and brought an action to nullify in the Eighth Judicial Circuit. That action was tried to a jury which returned its verdict in favor of the defendant, Dr. Gettes. The clerk entered judgment on the docket in favor of the defendant "for costs of suit."

In May 1981 when the arbitration award was rendered, and on two occasions in 1988, the HCAO made written demand on the parties to the arbitration, through their counsel, for payment of the arbitration costs. Then, in 1989, the State instituted the action which is now before us by filing in the District Court of Maryland sitting in Baltimore City a complaint against Dr. Gettes claiming $810.66, without any interest. The complaint alleged that the arbitration panel had determined that the administrative costs of the proceedings were to be divided, that Dr. Gettes had

---

1. We cite to the current Code provisions because no party contends that the result in this case is affected by any changes in the Act made after the arbitration or after the jury trial of the malpractice claim.

The procedural elements pertinent in a health claims arbitration dispute are discussed in *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *cert. dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978) and in Mullin, *Judicial Review of Health Claims Arbitration Awards: Practice and Pitfalls,* 17 U.Balt.L.Rev. 433 (1988).

been billed for his share of the costs "which he has refused to pay," and that "[u]nable to obtain payment," the State "brings this suit in the amount of $810.66." The District Court entered judgment in favor of Dr. Gettes.

The State appealed to the Circuit Court for Baltimore City which entered judgment in favor of Dr. Gettes. Finding merit in the positions of each party, the circuit court ruled in favor of Dr. Gettes because "the passive position taken by the Health Claims Board by letting this matter go over these many years ... should throw them out of Court at this late date."

We granted the State's petition for certiorari.

■ In response to the ground of decision by the circuit court in this action, the State submits that neither the statute of limitations nor laches applies to the State when it sues in its sovereign capacity in its own courts, citing *Central Collection Unit, State of Md. v. Atlantic Container Line, Ltd.*, 277 Md. 626, 628–29, 356 A.2d 555, 557 (1976), as to the statute of limitations, and *Salisbury Beauty Schools v. State Bd. of Cosmetologists*, 268 Md. 32, 63–64, 300 A.2d 367, 384–85 (1973), as to laches. Dr. Gettes does not dispute this analysis.

■ The parties to this appeal also share common ground in recognizing that an arbitration panel is not restricted to assessing costs against the losing party. CJ § 3–2A–05(f) provides:

"The award shall include an assessment of costs, including the arbitrators' fees. If there is no panel determination, the panel chairman shall assess costs."

We have held that the dictate of the above language

"is that, regardless of whom the award favors, included in the award shall be an assessment of costs. [The above quoted] subsection contains no prohibition against assessing the costs against the party [i]n whose favor the award is made. On the face of the statutes the assessment of costs is left to the discretion of the arbitration panel. Thus, in the exercise of that discretion, an assessment of

costs against the prevailing party does not offend the statutes. The challenged regulation is within the ambit of the Act...." [2]

*Tabler v. Medical Mut. Liab. Ins. Soc'y*, 301 Md. 189, 200, 482 A.2d 873, 879 (1984).

Thus, in arbitrations under the Act, we do not deal with a system in which costs follow the result. Under the legislatively created system the parties are ultimately to pay the costs of the arbitration. In practice, the HCAO initially pays the arbitrators' fees as an advance on behalf of the party or parties against whom the panel assesses costs in its discretion. There is no automatic connection between the obligation for arbitration costs, as determined by the panel, and the result on the merits, either in arbitration or in any subsequent malpractice action in court.

Here the State contends that the apportionment of one-half of the arbitration costs against Dr. Gettes is an award against him which he has never sought to set aside. Dr. Gettes contends that the award of costs cannot be enforced because it has never been confirmed, and, indeed, that it was rejected by the claimant. Independently of that argument Dr. Gettes also contends that the judgment of the court in his favor for costs, following the jury verdict, operated to reallocate for payment the arbitration costs so that it is the claimant who is now obligated to pay the portion of the arbitration costs previously assessed by the panel against the health care provider.

The fundamental conceptual issue presented by these contentions is the number of awards involved, or of proceedings required, for the purpose of subsequently attempting to overturn in some way the decision of the panel, both as to the merits and as to costs, or a part of the costs. As we shall see, resolution of the issue implicates justiciability

---

2. The "challenged regulation" was Md.Regs.Code tit. I, § 03.01.12 D.(1) (1980) which provides that "[a]n arbitration panel shall determine the arbitration costs, including arbitrators' fees and may apportion the costs among parties."

principles and the nature and scope of the judicial action. In other words, the procedure has to be governed by who is complaining, about what, to whom, and with what power to do something about it.

The State essentially views the panel's decision as at least two awards for purposes of the present problem, one deciding the merits and one or two additional awards deciding costs. Dr. Gettes essentially views the panel's decision as one, indivisible award. Thus, under Dr. Gettes's analysis, the notice of rejection filed by the claimant operated to reject the award of costs against him. Thereafter that conceptually indivisible award either remained "undetermined" or was brought to the court that heard the malpractice case where the judgment for circuit court costs also acted to adjudicate the arbitration costs in his favor.

Dr. Gettes's contention that the claimant's filing of a notice of rejection leaves the panel's allocation of costs "undetermined" is derived from, and mistakenly enlarges upon, certain language in *Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57, *cert. dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). *Johnson* decided a number of challenges to the Act, one of which was an asserted violation of the separation of powers principle embodied in Maryland Constitution, Art. IV, § 1. In rejecting that contention we emphasized the nonbinding nature of arbitration awards under the Act. Participating in nonbinding arbitration is "a condition precedent to the institution of a court action...." *Id.* at 284, 385 A.2d at 63. We said that "[e]ven if the parties accept the decision of the arbitrators, the panel which made it cannot enforce it." *Id.* at 287, 385 A.2d at 65. In footnote 13, inserted following the immediately preceding quotation, we referred to *Weber v. Lynch*, 473 Pa. 599, 375 A.2d 1278 (1977), for the proposition that an award in compulsory arbitration is not, in and of itself, a judgment. Quoting *Lanigan v. Lewis*, 210 Pa.Super. 273, 277, 232 A.2d 50, 52–53 (1967), as quoted in *Weber v. Lynch*, 473 Pa. at 610 n. 7, 375 A.2d at 1283 n. 7, we said in *Johnson:* " ' "When an appeal is taken the award becomes

an undetermined cause which must be tried de novo and prosecuted to judgment, discontinuance, or non pros." ' "
The attack on the Act in *Johnson,* and the concern of the opinion, had to do with a decision in arbitration on the merits of the malpractice claim. Certainly, when a notice of rejection and action to nullify are filed by a party aggrieved by the decision on the merits, the award on the merits becomes an undetermined cause, pending in the circuit court. But footnote 13 in *Johnson* does not deal with an award by the panel of costs against the party prevailing on the merits in arbitration.

Under the State's theory, for present purposes, there was an award against the claimant on the merits and an allocation of one-half of the costs against the claimant. There was also an award which allocated one-half of the costs against Dr. Gettes. Thus, the claimant was aggrieved by the decision on the merits and as to part of the disposition as to costs, while Dr. Gettes was aggrieved exclusively by the allocation of one-half of the costs against him.

Conceptualizing the panel's determination as comprising multiple awards is consistent with principles of justiciability, and particularly with the adversariness requirement for an action in court. *See Reyes v. Prince George's County,* 281 Md. 279, 283, 380 A.2d 12, 14–15 (1977). Under Dr. Gettes's unitary award theory a party who is not aggrieved by the allocation of costs against the adversary and who files notice of rejection and an action to nullify either causes the cost allocation against the adversary to become "undetermined" or preserves the adversary's aggrievement for court review.

This Court has used its rulemaking power to maintain adversariness in court actions governed by the Act. Maryland Rules of Procedure, Rule BY2 a, provides that an action to nullify an award is commenced "by filing notice of the action with the clerk of a court" after the award is served. Rule BY3 requires that the party making the claim against the health care provider be the plaintiff in an action to nullify. Rule BY4 a requires that the plaintiff file and

serve a malpractice complaint within thirty days after the filing of the notice of action. These provisions, in conjunction with the Act, force a realignment of the parties to the adversarial positions in a traditional malpractice court action in those arbitrated cases in which the health care provider is aggrieved by the award on the merits, files a notice of rejection, and is required by CJ § 3–2A–06(b)(1) to "file an action in court to nullify the award...." These rules have been effective since January 1, 1979, and the General Assembly has acquiesced in the procedure. But the procedure under the BY rules deals with the malpractice action, *i.e.*, the ultimate resolution of the merits, and not with the costs of arbitration.

■ In addition to the adversariness requirement, the nature and scope of review affects the conceptual number of awards and proceedings which may be involved in further review of decisions on the merits and as to costs in cases under the Act. *Tabler* makes plain that the arbitration costs allocation in arbitrated claims under the Act is a discretionary function of the arbitration panel. The Act does not in terms confer on any reviewing body the power to reallocate arbitration costs in the discretion of the reviewing body. Thus, if review of a panel's discretionary allocation is available, and if the attack in that review is against the way in which the discretion was exercised, the reviewing body can modify the panel's allocation only on very limited grounds. *See* n. 4, *infra.* That kind of review, as between court and jury, is quintessentially a judicial function. That is an additional reason why any review and possible reallocation of the costs in arbitration cannot be submitted to a jury trying the malpractice case. Because the award of arbitration costs by the arbitration panel is distinct from the merits of the malpractice claim in arbitration, any review and reallocation of arbitration costs cannot automatically follow the result of the malpractice action in the circuit court, even if that action is tried nonjury. For these reasons we hold that for purposes of judicial review of a panel's allocation of costs, an adverse allocation of

costs should be treated under the Act as an award, separate from the determination of the merits of the malpractice claim.[3]

We turn now to the terms of the Act and address the procedures by which the jurisprudential principles discussed above are implemented. Section 3–2A–06(c) of the Act reads:

*"Modification, correction, or vacation of award by court.*—An allegation that an award is improper because of any ground stated in § 3–223(b) or § 3–224(b)(1), (2), (3), or (4) or § 3–2A–05(h) of this article shall be made by preliminary motion, and shall be determined by the court without a jury prior to trial.[4]

---

**3.** The appropriate unit of consideration for various issues under the Act is a recurring problem. For example, we have held that, in a case involving multiple "issues of liability," the panel should state in the award its conclusion as to each "issue of liability," and the jury in the action to nullify should be advised of each such conclusion. *Su v. Weaver,* 313 Md. 370, 545 A.2d 692 (1988).

By treating an adverse allocation of costs as a separate award against a party who prevails on the merits, we do not intimate any view on whether awards on the merits may be segregated into awards finding liability and awards assessing damages. We are mindful of Chief Judge Gilbert's dictum for the Court of Special Appeals in *Osheroff v. Chestnut Lodge, Inc.,* 62 Md.App. 519, 523, 490 A.2d 720, 722 (1985): "Once the arbitration process has concluded, any party to the proceeding may, for any reason, reject the panel's determination of liability, damages, or both, and invoke court review." Ultimate resolution of that question must await another day when the issue is squarely presented. For example, a claimant may reject the award and file an action to nullify, complaining only of inadequate damages, while the health care provider does not reject and bring any action to nullify the adverse award that determines liability as well as damages. Query: In the action to nullify in the circuit court, may the health care provider insist, over objection, on introducing evidence exculpatory as to liability? May the health care provider have the issue of liability submitted to the jury? So long as health care providers also reject the award and bring actions to nullify, the issue will not arise. *See Teimourian v. Spence,* 59 Md.App. 74, 474 A.2d 919 (1984).

**4.** CJ §§ 3–223 and 3–224 are part of the Maryland Uniform Arbitration Act. Section 3–223(b) reads:

*"Conditions for modification or correction of award.*—The court shall modify or correct the award if:

Failure to raise such a defense by pretrial preliminary motion shall constitute a waiver of it. If the court finds that a condition stated in § 3–223(b) exists, or that the award was not appropriately modified in accordance with § 3–2A–05(h) of this subtitle, it shall modify or correct the award. If the rejecting party still desires to proceed with judicial review, the modified or corrected award shall be substituted for the original award. If the court finds that a condition stated in § 3–224(b)(1), (2), (3), or (4) exists, it shall vacate the award, and trial of the case shall proceed as if there had been no award."

*Tabler* commented on § 3–2A–06(c) in the context of arbitration costs assessed against the party prevailing in arbitration. In that case a medical malpractice insurer sought a judgment declaring invalid the HCAO regulation dealing with the statutory authority of an arbitration panel to allocate costs. The insurer's complaint alleged that the

---

(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award;

(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) The award is imperfect in a matter of form, not affecting the merits of the controversy."

CJ § 3–224 of the Maryland Uniform Arbitration Act deals with petitions to vacate an award, and subsection (b) of the section sets forth the grounds for vacating an award. To the extent incorporated into the Act, CJ § 3–224(b) reads:

"*Grounds.*—The court shall vacate an award if:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3–213, as to prejudice substantially the rights of a party...."

Section 3–2A–05(h) of the Act deals with applications to an arbitration panel for modification or correction of the award. Those provisions are not invoked in this case.

HCAO Director, and others, encouraged panels to assess costs, in whole or in part, against health care providers in whose favor awards on the merits had been entered. We held that this allegation was immaterial because the Director has no control over decisions by panels. In that context we said that "[i]f the [insurer] thought that the Director was improperly influencing a panel, it could resort to the statutory procedure whereby an award may be vacated if come about by 'undue means,'" citing § 3–2A–06(c). *Tabler*, 301 Md. at 199, 482 A.2d at 878.

It is apparent from the face of § 3–2A–06(c) that its primary concern is with a challenge to an award on the merits brought by one who is aggrieved by that award on the merits. The section presupposes that the notice of rejection required by subsection (a) and the filing of an action to nullify under subsection (b) have been complied with. Where the party aggrieved by the award on the merits seeks modification or vacating of the award and seeks trial of the malpractice case, the modification or vacating issue must be determined before trial of the malpractice case. If the award is vacated, the trial then proceeds as if there had been no award.[5]

Although § 3–2A–06(c) contains provisions which are surplusage if the section is invoked by a party to an arbitration under the Act who is aggrieved solely by an award as to costs, those surplus provisions do not prevent that party from invoking and following the procedures to the extent that they are relevant to an attack on a costs award. Thus, a party so aggrieved may give a notice of rejection of the award of costs against that party. That party may also file

---

5. In that instance, the malpractice case is tried without any presumption that the award was correct. Section 3–2A–06(d) of the Act provides:

"*Admissibility of award; presumption of correctness.*—Unless vacated by the court pursuant to subsection (c), the unmodified arbitration award is admissible as evidence in the judicial proceeding. The award shall be presumed to be correct, and the burden is on the party rejecting it to prove that it is not correct."

an action to nullify. Because that party is not rejecting the decision on the health care malpractice claim, subtitle BY of the Maryland Rules does not apply. The BY rules are concerned only with the malpractice action. Where an action to nullify is concerned only with the panel's allocation of costs, the action to nullify is not the "notice of the action" created by Rule BY2 a. The party rejecting the award as to costs may simply allege in the action to nullify those grounds relied upon by that party for modifying or vacating the adverse costs allocation.

█ It follows from the above holding that a party to an arbitration under the Act who desires to challenge both the award of costs and the award on the merits must file with the HCAO a notice of rejection as to both aspects of the award of which that party is aggrieved. That party must also file two cases, although we see no reason why both cases cannot be pleaded in a single complaint. The case challenging the allocation of costs will name the HCAO Director and the adversary on the malpractice claim as defendants. It will allege the grounds for vacating or modifying the award of costs, and it will be tried nonjury. The second case in the complaint will name the adverse party to the malpractice claim. If the party aggrieved by the award on the merits is the health care provider, that second case will simply give the notice of action under Rule BY4 a 1. If a party is aggrieved only by the award allocating costs against that party, that party's notice of rejection will specify only the adverse award of costs and that party's action to nullify will allege only grounds sufficient to modify the discretionary award of costs.[6]

---

**6.** In his concurring opinion Judge Chasanow decries the complexity of the legislatively created scheme. The concurring opinion would have been more informative if it had presented a complete analysis demonstrating the viability of a procedure alternative to that set forth above. Judge Chasanow proposes that the merits of the malpractice claim, the allocation of arbitration costs, and the award, if any, of counsel fees in arbitration be wrapped in one, large ball of wax which bounces from arbitration to the circuit court upon the filing by any

■ In the instant matter the amount of costs awarded against Dr. Gettes was below the minimum monetary jurisdiction of a circuit court. Nevertheless, an action to nullify an award of costs under the Act may be brought in a circuit court even if the amount of costs awarded is within the exclusive original jurisdiction of the District Court of Maryland. Compare CJ §§ 4–401 through 4–405. An application to modify or vacate an arbitration award invokes the equitable jurisdiction of a circuit court because legal remedies are inadequate. *See Baltimore & Ohio R.R. Co. v. The Canton Co.*, 70 Md. 405, 17 A. 394 (1889); *Sisk v. Garey*, 27 Md. 401 (1867). And *see* W. Brantly's note (*a*) to *B & T.C. Howard v. Warfield's Administrator*, 4 H. & McH. 21, 22 (1797); Mullen, *Arbitration Under Maryland Law*, 2 Md.L. Rev. 326, 334 (1938) ("When it is desired to set aside an

---

party, for any reason, of a notice of rejection and of an action to nullify. At that point the analysis in the concurring opinion stops.

Judge Chasanow recognizes that the allocation of costs in arbitration is not automatically governed by the result in circuit court on the merits of the malpractice claim. He also agrees that Dr. Gettes did not contest the allocation of part of the costs in arbitration against him. One must then ask when was Dr. Gettes to identify from within the ball of wax the issue of which he was aggrieved, how was he to identify it, and how was he to bring into court and align before the court those interests adverse to the relief which he sought. The opinion of the Court furnishes practitioners with a road map which utilizes the existing rules concerning complaint, joinder of claims, joinder of parties, service, and answer.

Reference is also made by the concurring opinion to CJ § 3–2A–07(a), a provision for the award by an arbitration panel of reasonable attorney's fees. That power was conferred by Ch. 640 of the Acts of 1986, well after the May 1981 award involved in the instant matter. In any event, CJ § 3–2A–07(a) further highlights the need, in any orderly procedure, for specifying what is being rejected, by whom, and for what reasons. The standard for awarding reasonable attorney's fees is "maintaining or defending any action ... in bad faith or without substantial justification." *Id.* A finding in the circuit court on the professional negligence issue will not decide whether the arbitration was maintained or defended in bad faith or without substantial justification. Yet, under the "ball of wax" approach, a plaintiff who rejects an award on the merits, motivated by a perceived inadequacy of damages, also rejects any award of counsel fees in the plaintiff's favor that had been entered because of the way in which the defense was conducted in arbitration.

award because it is defective, or because of improper practices of the arbitrators, or in the procuring of the award, proceedings to set it aside must be brought in equity." (Footnote omitted)). The practice is illustrated, without discussion in the opinion, in *Continental Milling & Feed Co. v. Doughnut Corp. of America,* 186 Md. 669, 48 A.2d 447 (1946) and in *Roberts v. Consumers Can Co.,* 102 Md. 362, 62 A. 585 (1905).[7]

■ Consequently, in the health claims arbitration which underlies the action now before us, the procedure under § 3–2A–06 was available to Dr. Gettes for challenging the award of arbitration costs against him, had he desired to do so. Incorporated into § 3–2A–06(c) of the Act from the Maryland Uniform Arbitration Act are the grounds specified in CJ § 3–224(b) for vacating an award, but Dr. Gettes did not avail himself of that procedure. Thus, the award of costs against Dr. Gettes is "final and binding" under § 3–2A–05(i) because he did not reject the award of costs against him and did not bring an action to nullify as required by § 3–2A–06(a) and (b).[8]

■ Nor does the fact that the HCAO Director did not cause the award of costs to be confirmed preclude the State from suing on the award to recover a judgment for the amount of costs awarded. At the time of the award in the instant matter, the Act provided:

---

7. In *Continental Milling,* lead counsel for the appellee was Philip B. Perlman, Esq., later Solicitor General of the United States. Mr. Perlman represented to this Court that "[i]t is now well settled in Maryland that a bill in equity is the proper procedure to set aside the invalid parts of an award made by arbitrators." *Continental Milling & Feed Co. v. Doughnut Corp. of America,* No. 148, October Term, 1945, Appellee's Brief at 47.

8. Even if Dr. Gettes rejected the award of costs and brought an action to nullify the award of costs, a judgment for costs in his favor in the malpractice action in court would have decided only taxable court costs in that court in that action. The judgment for costs in the circuit court would not have determined, ipso facto, the action to nullify the adverse award of arbitration costs.

"*Confirmation of award.*—Subject to § 3–2A–06, the award of the panel shall be final and binding on the parties. After the time for either rejecting or modifying the award has expired the Director shall file a copy of the award with the circuit court ... and the court shall confirm the award. Upon confirmation the award shall constitute a final judgment."

Md.Code (1974, 1980 Repl Vol), CJ § 3–2A–05(h). By Ch. 291 of the Acts of 1988, the subsection, which is now (i), was amended to provide that "the Director may, or, when requested by any party, shall file a copy of the award with the circuit court...."

Confirmation is simply an expeditious procedure for reducing or converting the arbitration award to a judgment which can be enforced by judicial writ. Compare CJ § 3–227, the confirmation provision under the Maryland Uniform Arbitration Act.

Before statutes or rules of court provided for confirmation, the procedure by which the party receiving a favorable award in arbitration could eventually obtain judicial enforcement of the award was more complex. Suit could be brought on the award against the party who lost the arbitration, seeking the amount awarded. Basically the action was in assumpsit. *See Chillum–Adelphi Volunteer Fire Dep't v. Button & Goode, Inc.,* 242 Md. 509, 516, 219 A.2d 801, 806 (1966); 2 J. Alexander, *British Statutes In Force in Maryland* 630–31 (Coe's 2d ed. 1912); 2 J. Poe, *Pleading and Practice* § 165 (Tiffany's 5th ed. 1925); Md. Code (1951), Art. 75, § 28(23) (presenting form of pleading for an action on an arbitration award).

Absent a provision in the arbitration statute making the statutory confirmation provision the exclusive method for entering judgment based on the award, and, in voluntary arbitration, absent a similar provision in a contract between the parties to the arbitration, the common law cause of action based on the award is not extinguished or abrogated. *See Kentucky River Mills v. Jackson,* 206 F.2d 111, 120 (6th Cir.), *cert. denied,* 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed.

392 (1953); *E.A. Bromund Co. v. Exportadora Affonso De Alburquerque, Ltda.,* 110 F.Supp. 502, 502–03 (D.C.S.D.N. Y.1953). Nothing in the Act prevents resort to the common law action.

Nor does Subtitle E of the Maryland Rules of Procedure, dealing with "Arbitration and Award," require the instant action on the award to be brought in a circuit court. Rule E2 provides:

> "After a final award has been made in writing in an arbitration to which the Maryland Uniform Arbitration Act is inapplicable, court proceedings may be had to confirm, vacate, modify, correct, *or enter judgment on the award.* In any such case, the provisions of the Maryland Uniform Arbitration Act concerning such proceedings shall be applicable."

(Emphasis added). The Maryland Uniform Arbitration Act defines "court" to mean "a court of equity." CJ § 3–201(b). In this action to recover the $810.66 awarded by the arbitrators (as contrasted with an action seeking to vacate or modify the award) the "debt or damages claimed" (CJ § 4–401(1)) and the "amount in controversy" (CJ § 4–402(d)(1)(i)) is the $810.66. There has been no prayer for jury trial in this action filed in the District Court. See CJ § 4–402(e). Were Maryland Rule E2 construed to override the distribution by the General Assembly of subject matter jurisdiction between circuit courts and the District Court so as to place in a circuit court this action which, by statute, is within the exclusive original jurisdiction of the District Court, Rule E2 would be a rule of substantive law, and its constitutional validity would be in serious doubt. *See Board of Educ. of Prince George's County v. Prince George's County Educators Ass'n,* 309 Md. 85, 96–97, 522 A.2d 931, 936–37; P. Niemeyer & L. Richards, *Maryland Rules Commentary* 11 (1984). Consequently, suit to recover the amount awarded, based on the award, was properly brought in the District Court.

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY REVERSED. CASE REMANDED TO THAT

COURT FOR ENTRY OF A JUDGMENT REVERSING THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND AND ENTERING JUDGMENT IN FAVOR OF THE STATE OF MARYLAND FOR $810.66 WITH COSTS. COSTS TO BE PAID BY THE RESPONDENT, NORTON I. GETTES.

CHASANOW, J., concurs in the result only.

CHASANOW, Judge, concurring.

I concur in the result, but not for the reasons espoused by the majority. In the circuit court Dr. Gettes never offered any reason, or even any argument, why the award of one-half of the arbitration costs against him was incorrect. When the circuit court entered judgment for "costs of suit" in favor of Dr. Gettes, those costs did not include the arbitration costs. Since Dr. Gettes never established that the decision allocating one-half the arbitration costs against each party was incorrect, that portion of the award remains in effect.

I do not concur with the majority holding that each allocation of arbitration costs constitutes an award, separate from the award on the merits of the claim. It seems inconceivable to me that the Legislature intended that a party challenging a Health Care Malpractice Claims Arbitration Panel's award on the merits as well as the allocation of one-half of the costs must file two separate actions to nullify—one suit to nullify the finding on the merits, the other suit to nullify the assessment of costs—and that when one party files an action to nullify, the other party, if aggrieved by a partial assessment of costs, must also file a separate suit to nullify the assessment of costs. Indeed, according to the majority's holding, if Ms. Hubbard had prevailed before the jury and proved Dr. Gettes was guilty of malpractice, she still could not have had the arbitration costs assessed entirely against Dr. Gettes since she did not file a separate action to nullify the award of costs.

The pivotal issue, where I part company with the majority opinion, is whether the assessment of costs is a separate award or is part of a single award. I think it is clear from the statute, language in our prior cases, and administrative practices that the assessment of costs is part of *the* award and not a separate award.

## A. *The Statute*

CJ § 3–2A–05(f) states: *"The award* shall *include* an assessment of costs, including the arbitrators' fees." (Emphasis added.) The statutory language seems to indicate that costs are part of the single award and not a separate award.

CJ § 3–2A–07(a) provides:

"If the arbitration panel finds that the conduct of any party in maintaining or defending any action is in bad faith or without substantial justification, the panel may require the offending party, the attorney advising the conduct, or both, to pay to the adverse party the costs of the proceeding and reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it. A determination made under the subsection shall become *part of the panel award* and subject to judicial review." (Emphasis added.)

Although enacted subsequent to the award in the instant case, this section also seems to reinforce the conclusion that the Legislature contemplated a single panel award which includes costs and, in appropriate cases, may include attorney's fees as *part of* that award.

## B. *Language of Our Prior Cases*

In *Attorney General v. Johnson,* 282 Md. 274, 303, 385 A.2d 57, 74, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), this Court indicated that health claims costs are part of the single award and are before the circuit court when either party files an action to nullify the award. Judge Digges, writing for the Court, stated:

"It only remains to ascertain whether the court proceeding, and hence the jury trial, following arbitration is subjected to any additional condition and, if so, whether that condition is so onerous as to make the right 'practically unavailable.' As a reading of the statute will make clear, the court proceeding with its jury trial is subjected to no regulation or burden of any kind as a precondition to its utilization. *The statute does provide that the award of the arbitration panel must encompass an assessment of costs, including arbitrators' fees, § 3–2A05(e); it also provides, however, that the award may be rejected and a court action filed. § 3–2A06(a) & (b). The arbitral fees, we must assume, are then part of the final assessment of costs,* and need not be paid as a precondition to the court proceeding and thus the jury trial." (Emphasis added, footnote omitted.)

In *Tabler v. Medical Mut. Liab. Ins.,* 301 Md. 189, 200, 482 A.2d 873, 879 (1984), Judge Orth wrote:

"The dictate of subsection (e) [of the Health Claims Arbitration Act] is that, regardless of whom the award favors, *included in the award* shall be an assessment of costs. That subsection contains no prohibition against assessing the costs against the party on whose favor the award is made."

In *Newman v. Reilly,* 314 Md. 364, 389, 550 A.2d 959, 971 (1988), we said: "Arbitration costs, including the arbitration fees, are included in the award in arbitration. *See* CJ § 3–2A–05(f). The circuit court confirmed the award [of arbitration costs] in the instant matter as part of its judgment on the merits entered February 3, 1987."

## C. *Administrative Practices*

It seems that the longstanding administrative practice, to which we should give some deference, is to treat the assessment of arbitration costs as part of a single, unified award that is before the circuit court when the award is rejected.

Dr. Gettes introduced letters to establish that, as late as 1988, the Director of the Health Claims Arbitration Office routinely wrote to the circuit court when an action to nullify an award had been filed, and asked the court to make a "specific assessment of [arbitration] costs against whomever the court feels should bear responsibility for same." It appears, however, that such a letter was not written in the instant case.

One apparent reason for the delay in attempting to collect the arbitration costs in the instant case was that the Health Claims Arbitration Office was awaiting a possible redetermination of arbitration costs by the circuit court. One of the exhibits in the case is a letter written by Mr. Tabler to both attorneys dated June 20, 1988, stating: "The *most recent Court Order* has assessed costs against your clients, Addie Mae Hubbard and Norton I. Gettes, M.D." (Emphasis added.)

In fact, I believe that it was not the State's intention to advocate the separate award theory adopted by the majority opinion. The State's primary contention was that, because the circuit court did not modify the arbitration panel's assessment of costs, the assessment was affirmed. In its brief, the State succinctly set forth the issue as follows: "The State and Dr. Gettes agreed that the sole issue before the circuit court in this case was whether the judgment in the action to nullify in favor of Dr. Gettes for costs of the suit *automatically modified* the arbitrators' apportionment of arbitration costs." (Emphasis added.) In oral argument before this Court, the Assistant Attorney General stated: "We're not saying that he would have to file a notice of rejection, Your Honor, because the other party did. And once that notice of rejection was filed, either party. could seek to have the award modified or vacated."

It seems illogical as well as impractical to hold that where the arbitration panel makes a decision on the merits and assesses half the costs against each party, full circuit court review of that determination will require one suit to nullify the decision on the merits plus two additional suits to

nullify the assessments of costs. There are other practical reasons why the allocation of costs should be treated as part of a single award and why if either party files a notice of rejection both parties ought to be able to contest any aspects of the award. It is clear that Dr. Gettes was willing to pay half of the arbitration costs if the litigation ended after that determination. Parties who prevail before the arbitration panel might be willing to pay half of the costs if the other side does not bring an action to nullify in the circuit court. Now, they may feel compelled to file a notice of rejection as a matter of course because the time for filing the notice might run before they learn whether the other party has filed a notice of rejection. As Dr. Gettes noted in his brief: "There is no provision for 'cross-rejection' in the Health Claims Arbitration Act similar to Maryland Rule 8–202(e)," and the time for filing a notice of rejection is not extended to allow a "cross-rejection" when the opposing party files a notice of rejection. Every health claims case where arbitration costs are divided may now spawn two additional circuit court suits to nullify arbitration cost awards. These new cases will place an additional, unnecessary burden on already overburdened circuit court clerks. Also, according to the majority opinion, each of these cases challenging the allocation of costs must "name the HCAO Director and the adversary on the malpractice claim as defendants." Majority Opinion at 683. Responding to these suits, even in the most cursory fashion in order to prevent a judgment by default, may prove to be unduly burdensome to the HCAO Director and his attorney.

I am also troubled by the gratuitous statement in the majority opinion that "if review of a panel's discretionary allocation [of costs] is available, and if the attack in that review is against the way in which the discretion was exercised, the reviewing body can modify the panel's allocation only on very limited grounds. *See* n. 4, *infra.*" Majority Opinion at 679. The majority opinion, without benefit of briefs or argument on the issue, goes on to imply that only the very limited grounds set out in CJ §§ 3–223 and

3–224 for modifying, correcting, or vacating arbitration awards are available to review an award of costs. These grounds are in effect limited to corruption, miscalculation, or exceeding the arbitrator's authority. Health claim arbitration costs are not *de minimis;* in the instant case they amounted to $1,621.32, and they are often several times that amount. The power to award arbitration costs is coupled with the power to award counsel fees for actions filed in bad faith or without substantial justification under CJ § 3–2A–07(a). The assessment of costs is to be made by the panel chairman alone if the entire panel fails to do so. CJ § 3–2A–05(f). If costs are assessed arbitrarily, or solely on the basis of such factors as who is better able to pay them, or whether insurance is involved, this determination ought to be subject to judicial scrutiny beyond the very limited grounds available to vacate an arbitration award under CJ §§ 3–223 and 3–224. If, as the majority holds, the arbitration costs constitute a separate award, it seems to me that, as with any Health Claims Arbitration Panel award, "[t]he award shall be presumed to be correct, and the burden is on the party rejecting it to prove that it is not correct." CJ § 3–2A–06(d). It is my opinion that resolution of this important issue should be deferred until the Court has a proper case and the benefit of briefs and argument on the subject. *See Bd. of Educ. v. P.G. Co. Educator's Ass'n,* 309 Md. 85, 105, 522 A.2d 931, 941 (1987).

For the reasons indicated, I concur in the result; I do not concur with the majority opinion that the assessment of arbitration costs is a separate award requiring a separate action to nullify and that the assessment of arbitration costs cannot be reviewed in the action to nullify the award on the merits.