490 A.2d 720

**Raphael J. OSHEROFF**

v.

**CHESTNUT LODGE, INC., et al.**

**No. 1016, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

April 10, 1985.

520

Burt M. Kahn, Hyattsville (Fred R. Joseph, Hyattsville, Philip J. Hirschkop, John D. Grad, David J. Fudala and Hirschkop & Grad, P.C., Alexandria, Va., on brief), for appellant.

James F. Rosner, Baltimore (Alfred L. Scanlan, Jr. and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, on brief), for appellee, Chestnut Lodge, Inc.

John T. Hull, Rockville (William A. Ehrmantraut and Donahue, Ehrmantraut & Montedonico, Rockville, on brief), for appellees, Ross and Dingman.

Argued before GILBERT, C.J., and WILNER and ROBERT M. BELL, JJ.

GILBERT, Chief Judge.

Raphael J. Osheroff was a claimant before the Health Claims Arbitration Office (HCAO).[1] An arbitration panel acting for the HCAO ultimately found in Osheroff's favor. It issued a determination of award in the amount of $250,-

---

1. *See* Md.Cts. & Jud.Proc.Code Ann. §§ 3–2A–01 through 3–2A–09.

000. The health care providers, against whom the award was handed down, Chestnut Lodge, Inc., Manuel Ross, M.D., and C. Wesley Dingman, M.D., filed a notice of rejection of the arbitration award with the HCAO and in the Circuit Court for Montgomery County.[2]  Osheroff then filed certain pleadings with the HCAO and circuit court.[3]  The health care providers-defendants filed a motion raising preliminary objection.  They asserted that the circuit court should dismiss the appeal because: 1) it lacked jurisdiction, since Osheroff had failed to file a "declaration" as required by the health claims arbitration statute and the Maryland Rules; 2) Osheroff had failed to furnish service, in accordance with the Maryland Rules, of the pleadings filed in the circuit court;  and 3) the award filed by the HCAO was invalid because of irregularities alleged to have transpired at the HCAO.  The circuit court responded after a hearing by dismissing Osheroff's appeal of the HCAO award.  The circuit court found that Osheroff had failed to file a "declaration" as mandated by Courts Art. § 3–2A–06(b) and Rule BY4.  The court further found that HCAO had improperly made the award in the first instance.[4]

Distressed by the action of the circuit court, Osheroff has journeyed to this Court.  He poses two questions for our review.  We address the issues in the order in which they were put to us, adding such facts as may be necessary to the discussion.

## I.

Did the Circuit Court for Montgomery County correctly determine that Osheroff had failed to file a declaration,

---

**2.**  Courts Art. § 3–2A–06(a) and Md.Rules BY2 and BY4; *see also Tranen v. Aziz,* 59 Md.App. 528, 476 A.2d 1170, *cert. granted,* 301 Md. 471, 483 A.2d 754 (1984).

**3.**  Md.Rules BY2 and BY3.

**4.**  As previously mentioned, an additional basis for the motion raising preliminary objection was the lack of proper service of process on the health care providers.  That ground was not ruled on by the circuit court, and is not before us.  Md.Rule 1085.

and that the result of that failure precluded that court from acquiring jurisdiction to hear the appeal from HCAO?

Resolution of this issue requires examination of the language of the statute and the Maryland Rules which govern health claim arbitration proceedings, as well as the interaction between them.

Actions alleging medical malpractice are regulated in this State by Courts Art. §§ 3–2A–01 through 3–2A–09 and by Subtitle BY of the Maryland Rules of Procedure. The statute requires that all health claim actions for a sum in excess of $5,000 [5] must initially proceed through non-binding arbitration before a panel selected from a pool of individuals offered by the HCAO. Courts Art. § 3–2A–03(c); *and see Group Health Assoc. Inc. v. Blumenthal,* 295 Md. 104, 114–15, 453 A.2d 1198, 1205 (1983). Once the arbitration process has concluded, any party to the proceeding may, for any reason, reject the panel's determination of liability, damages, or both, and invoke court review. Courts Art. § 3–2A–06(a). The rejecting party must notify in writing the director of the HCAO and the other parties of the rejection no later than 30 days after the award is served on the rejecting party. Courts Art. § 3–2A–06(a). The notice of rejection is of no effect unless the rejecting party also files "an action in court to nullify the award." The action to nullify must be filed in accordance with Md.Rule BY4.

After the notice to nullify has been filed in court, subsequent proceedings are controlled by the Maryland Rules. Courts Art. § 3–2A–06(b). Once the rejecting party has filed a notice to nullify the award, the claimant before the HCAO becomes the judicial plaintiff, irrespective of whether he or she is the rejecting party. Md.Rule BY3. The rules make pellucid that when a notice to nullify has been filed with the court, the onus is upon the plaintiff to file a

---

**5.** HCAO does not have jurisdiction over claims of $5,000 or less. Courts Art. § 3–2A–02(a).

"declaration" (now styled "complaint")[6] in the court within 30 days of the date the notice of rejection was filed. Md.Rule BY4(a).

■ Osheroff admits that he never filed in the circuit court a document entitled "declaration." Notwithstanding that fact, he contends that the pleadings he filed entitled, "Action to Nullify HCA Award" and "Amended Action to Nullify HCA Award," substantially complied with all the requirements of Md.Rule BY4. He asserts that the pleadings he filed serve as the functional equivalent of a declaration. We agree with Osheroff that mere misappellation of a pleading should not ordinarily provide the predicate for a dismissal without leave to amend.[7]

Osheroff's initial pleading was entitled, "Action to Nullify HCA Award." It was filed on January 31, 1984, well within 30 days from the receipt of the arbitration award. Within 7 days thereafter, Osheroff filed an "Amended Action to Nullify HCA Award." Appended to that action, as with the original pleading, was the "Amended Arbitration Panel Determination" and a copy of the "Amended Statement of Claim," he had previously filed with the HCAO. The amended action to nullify included a prayer for a jury trial.

■ The health claims arbitration statute was enacted as a legislative remedy to a perceived medical malpractice insurance crisis. Its constitutionality is settled. *See Tabler v. Medical Mutual Ins. Society,* 301 Md. 189, 191–92, 482 A.2d 873, 874–77 (1984); *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). The act sets out procedural

---

**6.** *See* Md.Rule 2–302. Md.Rule BY4, however, still refers to the initial pleading as a "declaration."

**7.** The current Maryland Rules direct that all initial pleadings will be styled, "complaint." Md.Rule 2–302. Nevertheless, Md.Rule BY4 commands the health claims plaintiff to file a "declaration." To dismiss an initial pleading, which otherwise comports with the rules, because it is entitled "complaint" rather than "declaration," or vice versa, would be absurd.

requirements which must be observed before judicial review of a malpractice claim may be obtained. A litigant's failure to tread any of the prescribed steps along the path of arbitration may result in dismissal of an action. *See, e.g., Tranen v. Aziz,* 59 Md.App. 528, 476 A.2d 1170, *cert. granted,* 301 Md. 471, 483 A.2d 754 (1984); *Bailey v. Woel,* 55 Md.App. 488, 462 A.2d 91 (1983), *aff'd,* 302 Md. 38, 485 A.2d 265 (1984); *Schwartz v. Lilly,* 53 Md.App. 318, 452 A.2d 1302 (1982). In short, the arbitration act is a condition precedent to judicial review of a medical malpractice claim. *Group Health Ass'n v. Blumenthal,* 295 Md. 104, 114–15, 453 A.2d 1198, 1205 (1983) (quoting *Attorney General v. Johnson,* 282 Md. 274, 283–84, 385 A.2d 57, 63 (1978)).

■ It must be borne in mind that the statute is strictly construed so as to effectuate the legislative purpose of screening malpractice claims *before* they reach the courts. Upon completion of the arbitration process and the filing of the correct and timely notice of rejection with the parties and court, the statutory screening process is terminated. All further proceedings are conducted in court and regulated, as are all other civil cases, by the Maryland Rules. Although judicial review of the HCAO actions might be regarded as a continuation of the arbitration proceeding, it is not. Rather, it is a new, separate, and distinct proceeding. It is litigation.

The health care providers, in the matter *sub judice,* objected to Osheroff's initial pleading by challenging the technical and legal sufficiency of his "declaration." They claimed that any such deficiencies foreclosed court jurisdiction to review the HCAO proceedings.

■ Our review of Osheroff's initial pleading leads us to agree with the circuit court's observation that he "did not properly adhere to the Maryland Rules...." Unlike the circuit court, we think Osheroff's claim should not have been dismissed. The shortcomings it possessed did not deprive the court of jurisdiction. The "Amended Action to Nullify HCA Award" substantially constituted a "declara-

tion" within the meaning of Md.Rule BY4 and Courts Art. § 3–2A–06(b), even though the pleading was inartfully drawn and would never suffice as a model.

The "Amended Statement of Claim" contains all of the essential elements of a viable declaration. There are allegations of negligently failing to diagnose Osheroff's true condition, negligently treating him, and of providing inappropriate treatment for the illness he suffered. Additionally, the "Amended Statement of Claim" contains an allegation that the claim exceeded $5,000, thus placing the matter in the circuit court.[8]

In order to comply with Courts Art. § 3–2A–06(b) and Md.Rule BY4, Osheroff attempted to file a pleading entitled, "Amended Declaration," but the circuit court refused to accept it.

■ Maryland is most liberal in allowing amendments so that causes of action may be heard on the merits. *See Crowe v. Houseworth*, 272 Md. 481, 325 A.2d 592 (1974); *Gensler v. Korb Roofers, Inc.*, 37 Md.App. 538, 378 A.2d 180 (1977); *Staub v. Staub*, 31 Md.App. 478, 356 A.2d 609 (1976). In light of the Maryland policy that amendments are freely allowed, the trial court erred in not permitting Osheroff to file the "Amended Declaration" that he proferred to the court.

## II.

Did the circuit court correctly rule that the director of the HCAO had improperly interfered with the decision of the arbitration panel so that the determination the HCAO made was invalid and, therefore, not reviewable in the circuit court?

The arbitration panel initially submitted the following findings to the HCAO:

---

8. *See* Courts Art. § 3–2A–02.

"Arbitration Panel Determination

Case Name <u>Osheroff v. Chestnut Lodge</u>

. . . .

1. LIABILITY: <u>Panelists Lynne and Hilberg—All defendants liable</u>
<u>Panel Chairman—No Liability</u>

2. DAMAGES: <u>Dr. Hilberg—Chestnut Lodge—expenses for 4</u>

| | |
|---|---|
| months | $19,087. |
| Silver Hill expenses | 23,238. |
| Dr. Lebensohn | 150. |
| Dr. Hilberg's Total Damage Award | $42,465. |

Mrs. Lynne's total would be $442,465.62 which includes $400,000.00 for pain and suffering.

3. COSTS: <u>Panelists—Lynne & Hilberg—against defendants</u>
<u>Panel Chairman—against claimant</u>

December 23, 1983
Decision Date"

The director of HCAO rejected the panel's determination as being "unacceptable," in that it did not constitute a majority decision. After reconsideration, the panel returned an "amended" determination award in which a majority found in favor of Osheroff in the amount of $250,000.

Courts Art. § 3–2A–03(b)(3) allows the director to "adopt reasonable rules and regulations to govern" HCAO proceedings. COMAR 01.03.01.08C directs that "[a]n arbitration panel shall exercise its authority by a majority."

In this Court, as in the circuit court, the health care providers argue that the director of the HCAO has no judicial function in the HCAO process, citing *Attorney General v. Johnson*, 282 Md. 274, 285–87, 385 A.2d 57, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). By rejecting the panel's first determination, the director, the appellees assert, performed a judicial act. They argue that he exceeded his authority and brought undue influence to bear upon the panel in violation of Courts Art. § 3–224(b)(1). Reasoning from that premise, the health care providers conclude that since the panel's

amended award was invalid, "the circuit court was correct in vacating the [amended] arbitration award." [9]

We do not agree that the director's action in sending the initial non-decision back to the arbitration panel for a decision was a usurpation of any judicial function. All that the director did was insist that the panel perform its function, *i.e.*, a majority of the panel agree upon a determination. That, after all, is why the arbitration process was selected by the legislature. The reason for arbitration is to arrive at a decision, not a non-decision. An arbitration panel of three persons exists so as to permit a majority decision. COMAR 01.03.01.08C. The director's action was proper, and the panel's amended determination was also valid.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.

---

9. The logical extension of the appellees' argument would be that neither court review nor further HCAO proceedings would be available to Osheroff. The result would be that Osheroff's substantive claim on the merits and the $250,000 award would be procedurally eradicated once and for all.