604 A.2d 73

**Helen Denise CRAWFORD, et al.**

v.

**William LEAHY, et al.**

No. 84, Sept. Term, 1991.

Court of Appeals of Maryland.

April 9, 1992.

Motion for Reconsideration Denied May 8, 1992.

Mark S. Carlin (Sherman, Meehan & Curtin, P.C., both on brief), Washington, D.C., for appellants.

Neal M. Brown (Karen S. Payne, Miles & Stockbridge of Towson, Mark D. Gately, Baltimore), all on brief, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

In this case we are once more called upon to construe the Health Care Malpractice Claims Act, Maryland Code (1989, 1991 Cum.Supp.) §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article (the Act). The narrow question presented is whether an award of the health claims arbitration panel in favor of the claimant on the merits can be subdivided into an award finding liability and an award assessing damages, permitting the claimant to seek judicial review of only the amount of damages awarded. We shall answer that question in the negative and affirm the judgment of the trial court.

I

Helen Denise Crawford alleged that she was injured as a result of malpractice by Dr. William R. Leahy and his professional association, Neurological Medicine, P.A. (collectively "Dr. Leahy"). Mrs. Crawford and her husband[1] (Crawfords), filed a claim against Dr. Leahy, pursuant to the Act. After a hearing before a health claims arbitration panel, the Crawfords obtained an award of $37,768 against Dr. Leahy. The panel's decision was rendered on a preprinted form which compelled the arbitrators to set forth separately their decisions regarding liability, damages, and costs, as required by the Act.[2]

---

**1.** Alan Crawford, the husband of Mrs. Crawford, joined her in a claim for loss of consortium.

**2.** Section 3–2A–05 provides in pertinent part:
"(e) *Determinations.*—The arbitration panel shall first determine the issue of liability with respect to a claim referred to it. If the arbitration panel determines that the health care provider is not liable to the claimant or claimants the award shall be in favor of the health care provider. If the arbitration panel determines that a health care provider is liable to the claimant or claimants, it shall then consider,

Dissatisfied with the amount of damages, the Crawfords filed a pleading in the Circuit Court for Prince George's County entitled "Notice of Action to Nullify Award as to Damages Only," attempting to reject the award of the panel as it related to damages only in an effort to prevent *de novo* judicial review of the arbitration panel's liability determination. The Crawfords simultaneously filed a complaint, as required by Maryland Rule BY4, alleging that Dr. Leahy had been negligent in his care and treatment of Mrs. Crawford. The Crawfords demanded a jury trial "on all issues herein."

In response, Dr. Leahy filed a "Motion to Strike or, in the Alternative, for Complete Rejection of the Arbitration Award." In that pleading, Dr. Leahy asserted that the Act required that the Crawfords reject the liability finding in their favor as well as the damages determination or, alternatively, that the Crawfords' notice of rejection should be deemed to have rejected the entire award. Concluding that there is "no authority to allow an appeal from Health Claims Arbitration on the issue of damages alone," Judge William H. McCullough granted Dr. Leahy's motion to strike, giving the Crawfords leave to file an amended notice of action to nullify award and complaint.

Thereafter, the Crawfords filed an "Amended Notice of Action to Nullify Award," stating that they "reject the award of the Health Claims Arbitration panel as it relates to liability and damages." The Crawfords also filed an "Amended Complaint" that was identical to the originally filed complaint; both pleadings contained allegations of negligence. Dr. Leahy answered, denying liability.

itemize, assess, and apportion appropriate damages against one or more of the health care providers that it has found to be liable. The award shall itemize by category and amount any damages assessed for incurred medical expenses, rehabilitation costs, and loss of earnings. Damages assessed for any future expenses, costs, and losses shall be itemized separately.

"(f) *Assessment of costs.*—The award shall include an assessment of costs, including the arbitrators' fees. If there is no panel determination, the panel chairman shall assess costs."

Ten months later, after extensive discovery regarding matters relevant to both liability and damages, and ten days before trial, the Crawfords, in another attempt to limit the trial solely to the issue of damages, moved for reconsideration of the court's earlier decision. The Crawfords suggested that "[t]he 'all or nothing' approach adopted by Judge McCullough requires plaintiffs to prove a *non sequitur*, that is, that the liability finding in their favor is 'not correct.'" Dr. Leahy opposed this motion, noting that once the award is rejected by either party, the case proceeds *de novo*, so that the jury necessarily considers the issue of Dr. Leahy's liability. Dr. Leahy reiterated his prior arguments that neither the statute nor the rules permit piecemeal rejection of an award as asserted by the Crawfords. Judge James P. Salmon, who was to preside at the trial, denied the motion for reconsideration.

The case proceeded to trial before a jury. In support of their claims, the Crawfords presented evidence which included not only the arbitration award, but also extensive expert testimony on the issue of Dr. Leahy's alleged negligence. The case was submitted to the jury on specific issues pursuant to Md.Rule 2–522. The jury returned a special verdict finding that Dr. Leahy was not negligent with regard to his care and treatment of Mrs. Crawford.

The Crawfords timely appealed to the Court of Special Appeals from the judgment entered on that special verdict. We issued a writ of certiorari on our own motion, prior to argument before the Court of Special Appeals, to consider the important issue raised by this appeal.

## II

When the General Assembly originally adopted the Act by Ch. 235 of the Acts of 1976, it mandated that all claims for medical malpractice be submitted to an arbitration panel

prior to pursuing them by an action in court.[3] Nevertheless, we have explained:

> "The mandatory arbitration requirement does not divest courts of subject matter jurisdiction over health claims, but rather ' "creates a condition precedent to the institution of a court action." ' *Tranen* [*v. Aziz* ], 304 Md. [605] at 612, 500 A.2d [636] at 639 [ (1985) ] (quoting *Oxtoby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 865 (1982)). Upon fulfillment of the condition precedent, malpractice claims may be heard in court.

> "The final step in the arbitration process, an essential prerequisite to institution of judicial proceedings, is the filing of a notice of rejection with the director of the Arbitration Office. *Tranen*, 304 Md. at 612, 500 A.2d at 639; § 3–2A–06(a). Failure to file notice of rejection permits the arbitration award to become final and binding. *Tranen*, 304 Md. at 613, 500 A.2d at 640; § 3–2A–05(h).

> "The 'exclusive step by which the aggrieved party may initiate proceedings in court,' *Tranen*, 304 Md. at 612, 500 A.2d at 639, is the action to nullify the award. Section 3–2A–06(b). Although called an action to nullify, the proceeding is not analogous to an appeal from an administrative decision. Rather, the action is essentially a separate common law tort action with the added element that the arbitration process must be complete. *See Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978)."

*Ott v. Kaiser–Georgetown Health Plan*, 309 Md. 641, 645–46, 526 A.2d 46, 49 (1987).

---

**3.** Originally, § 3–2A–02(a) mandated arbitration for all medical malpractice claims in which damages of more than $5,000 were sought. Section 3–2A–02(a) (1974, 1979 Cum.Supp.). The section has since been amended to require arbitration for all such claims in which damages of more than the limit of the concurrent jurisdiction of the District Court are sought. Ch. 640 of the Acts of 1986 (codified as amended at § 3–2A–02(a) (1989, 1991 Cum.Supp.)).

A.

Whether the Act permits rejection of the panel's award soley as to damages is an issue of statutory construction and as such is ordinarily determined by reference to legislative intent. When we seek to ascertain and effectuate legislative intent, "we look first to the words of the statute, read in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence." *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989). *See State v. Bricker,* 321 Md. 86, 92, 581 A.2d 9, 12 (1990); *Davis v. State,* 319 Md. 56, 60, 570 A.2d 855, 857 (1990); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987). In doing so, we give the language of the statute its natural and ordinary signification, bearing in mind the statutory aim and objective. *Harford County v. University,* 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *NCR Corp. v. Comptroller,* 313 Md. 118, 124–25, 544 A.2d 764, 767 (1988); *Boulden v. Mayor,* 311 Md. 411, 414, 535 A.2d 477, 479 (1988); *In Re Ramont K.,* 305 Md. 482, 484, 505 A.2d 507, 508 (1986). Moreover, we approach the analysis of the language from a "commonsensical," rather than a technical perspective, *United States v. Universal Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952); *Dickerson v. State,* 324 Md. 163, 171, 596 A.2d 648, 652 (1991), always seeking to avoid giving the statute a strained interpretation or one that reaches an absurd result. *Potter v. Bethesda Fire Dep't,* 309 Md. 347, 353, 524 A.2d 61, 64 (1987); *Schweitzer v. Brewer,* 280 Md. 430, 438–39, 374 A.2d 347, 352 (1977).

Applying these principles to the language of the Act, the arbitration award on the merits clearly is comprised of two essential and related determinations: liability and damages. § 3–2A–05(e), (h). These combined determinations on the merits constitute the "award" of an arbitration panel as defined by the Act. *Id.* Under § 3–2A–05(e) of the Act, the health claims arbitration panel issues an "award" consisting

of "determinations" regarding liability and, if applicable, damages:

> *"Determinations.*—The arbitration panel shall first determine the issue of liability with respect to a claim referred to it. If the arbitration panel determines that the health care provider is not liable to the claimant or claimants *the award* shall be in favor of the health care provider. If the arbitration panel determines that a health care provider is liable to the claimant or claimants, it shall then consider, itemize, assess, and apportion appropriate damages against one or more of the health care providers that it has found to be liable. *The award shall itemize ... any damages ..."*

§ 3–2A–05(e) (emphasis added). Thus, the language of the Act carefully differentiates not only between the singular and the plural, but also between the liability and damage determinations and the award. The Act consistently and repeatedly refers to the panel's determinations on the merits as "an award." The ordinary and reasonable meaning of the explicit use of the term "award" in this statute is that the panel's award on the merits is a single award, which includes both a determination of liability and a determination of damages. The Crawfords' construction would make the terms "determinations" and "award" synonymous and interchangeable. Nothing in the statute supports such a construction. *See Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982) (a court may not insert, omit, or ignore words to make a statute express intentions not evident in its original form). Finally, § 3–2A–06(a) of the Act states that "[a] party may reject an award ... for any reason."[4]

---

4. In order to initiate proceedings in court, either party must file a notice of rejection of the award in substantial compliance with the Maryland BY Rules that implement the Act. *See* § 3–2A–06(a); Md. Rule BY2. In an action to nullify the award, "[t]he award shall be presumed to be correct, and the burden is on the party rejecting it to prove that it is not correct." § 3–2A–06(d).

The Crawfords' construction also would require us to construe the word "an" preceding "award" as surplusage. Notwithstanding the plain and unambiguous language of the statute, the Crawfords contend that the "arbitration panel's determination is comprised of multiple awards," and that a party may limit its rejection to the panel's determination of damages alone. The Crawfords offer no statutory analysis in support of their position. Their contention that the Act permits piecemeal rejection of one or more portions of the arbitration award would require judicial amendment of the Act to read: "Any party may reject either the panel's liability determination or the panel's damages determination, or both, for any reason." No language in the statute supports such an amendment. According to § 3–2A–06(a) of the Act, it is only the arbitration panel's "award" that may be rejected and, as such, there is no basis in law for a rejection of only the damages determination portion of the award on the merits. Simply stated, once an award is rejected by either party, regardless of the specific determination that is disputed, "the matter is tried all over." *Maryland Civil Pattern Jury Instructions* § 27:2, at 595 (2d ed. 1984), *quoted in Newell v. Richards,* 323 Md. 717, 734, 594 A.2d 1152, 1160–61 (1991).[5] In sum, the plain

---

5. In *Newell* we pointed out that the pattern jury instruction quoted is only accurate if coupled with an instruction as to the common law burdens of proof in a medical malpractice case. We advised:

"If the claimant is unsuccessful before the arbitration panel, the jury is instructed that the plaintiff has the burden of proof and that the award in favor of the health care provider is presumed correct. If the claimant is successful before the arbitration panel, the court should not instruct the jury that the burden of proof is on the defendant/health care provider; the court should instruct the jury that the claimant has the burden of proof and couple that with an instruction that there has been a health claims panel award in favor of the claimant which is presumed correct and that the burden is on the health care provider to show that the award is not correct. Thus, the health care provider's burden of proof relates only to an item of evidence, *i.e.,* that the panel award is not, in fact, correct. An arbitration panel award in favor of a claimant is admissible and presumed correct, but it does not shift the common law burden of proof to the health care provider."

*Id.* at 733–34, 594 A.2d at 1160.

language of the Act supports the trial court's conclusion that the panel's award is indivisible for purposes of judicial review. Consequently, when the award is rejected, the action to nullify that award must present the issue of liability as well as the issue of damages for determination in the malpractice action in court.

## B.

In addition to the lack of support in the language of the Act for its construction as urged by the Crawfords, there is no case law permitting rejection of only the damage determination of an arbitration award. Nevertheless, the Crawfords take solace in our recent decision in *Central Collection v. Gettes,* 321 Md. 671, 584 A.2d 689 (1991). *Gettes,* however, provides no support for segregating an award on the merits into an award finding liability and an award assessing damages. In fact, in *Gettes* we explicitly avoided either deciding or intimating a decision on the specific issues raised by the Crawfords here:

"By treating an adverse allocation of costs as a separate award against a party who prevails on the merits, we do not intimate any view on whether awards on the merits may be segregated into awards finding liability and awards assessing damages. We are mindful of Chief Judge Gilbert's dictum for the Court of Special Appeals in *Osheroff v. Chestnut Lodge, Inc.* [62 Md.App. 519, 490 A.2d 720]: 'Once the arbitration process has concluded, any party to the proceeding may, for any reason, reject the panel's determination of liability, damages, or both, and invoke court review.' Ultimate resolution of that question must await another day when the issue is squarely presented. For example, a claimant may reject the award and file an action to nullify, complaining only of inadequate damages, while the health care provider does not reject and bring any action to nullify the adverse award that determines liability as well as damages. Query: In the action to nullify in the circuit court, may the health care provider insist, over objection, on intro-

ducing evidence exculpatory as to liability? May the health care provider have the issue of liability submitted to the jury?"

*Id.* at 680 n. 3, 584 A.2d at 693 n. 3 (citation omitted).[6]

*Gettes* was a collection action brought by the State against a health care provider to recover the costs of arbitrating a health care claim.[7] Although Dr. Gettes prevailed on the merits both in arbitration and at trial, the arbitration panel assessed one-half of the arbitration costs against him. Dr. Gettes "did not seek any form of direct judicial review of the panel's adverse award of partial costs." *Id.* at 673, 584 A.2d at 690. Eight years later, after repeated demands for payment of the arbitration costs, the State filed suit against Dr. Gettes in the District Court. On appeal, we held that "for purposes of judicial review of a panel's allocation of costs, an adverse allocation of costs should be treated under the Act as an award, separate from the determination of the merits of the malpractice claim." *Id.* at 679–80, 584 A.2d at 693 (footnote omitted). We reasoned that "[c]onceptualizing the panel's determination as comprising multiple awards is consistent with principles of justiciability, and particularly with the adversariness requirement for an action in court," *id.* at 678, 584 A.2d at 692, because those principles require that the party aggrieved by an adverse panel decision take affirmative steps to overturn it.

The Crawfords concede that the holding in *Gettes* is inapposite to the instant case, but contend that "reversal of

---

6. In an emergency response to *Gettes,* the General Assembly amended the Act to partially codify and partially override the decision. Ch. 25 of the Acts of 1991. Significantly, the Legislature did not address the question of rejection of damages only, despite the express reservation of that issue in *Gettes.*

7. Costs incurred in an arbitration proceeding, including arbitrators' fees, are routinely advanced by the Health Claims Arbitration Office. When an arbitration proceeding concludes, whether by panel decision or by dismissal, costs are assessed against one or both of the parties. Such assessments of costs are payable to the State as reimbursement for its advances. *See Gettes,* 321 Md. at 676, 584 A.2d at 691.

the judgment in favor of Dr. Leahy is compelled by the same 'principles of justiciability,' ... that led the [*Gettes*] Court to hold that a health claims arbitration panel's determination is comprised of multiple awards, at least as to its costs and merits decisions." The Crawfords' reliance on the rationale of *Gettes* is misplaced. First, the Crawfords' stated concerns for "justiciability" and "adversariness" ignore that, unlike Dr. Gettes, Dr. Leahy immediately and successfully challenged the Crawfords' novel attempt at rejection of the damages award only to ensure that the issue of Dr. Leahy's liability would be submitted to the jury. In contrast, Dr. Gettes made no attempt by an action to nullify or otherwise to challenge the panel's allocation of costs against him.

Additionally, the Crawfords entirely fail to consider how the "nature and scope of review" applicable to decisions on the merits "affect the conceptual number of awards." *Gettes*, 321 Md. at 679, 584 A.2d at 693. Although *Gettes* does construe the costs allocation as separate from the award on the merits, we in no way suggested by our reasoning that the award on the merits is divisible into separate awards of liability and damages. Rather, *Gettes* rests on and in fact highlights the substantive distinction between an assessment of costs and an award by the arbitration panel on the merits. Our rationale was based squarely on the statutory and practical differences between an "award allocating costs" and an "award on the merits":

> "[I]n arbitrations under the Act, we do not deal with a system in which costs follow the result.... There is no automatic connection between the obligation for arbitration costs, as determined by the panel, and the result on the merits, either in arbitration or in any subsequent malpractice action in court."

*Id.* at 676, 584 A.2d at 691. Further, we emphasized that "the arbitration costs allocation in arbitrated claims under the Act is a discretionary function of the arbitration panel," and, as such, costs assessments are subject to judicial

review "only on very limited grounds." [8]  *Id.* at 679, 584 A.2d at 693.  Significantly, the costs assessment "cannot be submitted to a jury trying the malpractice case."  *Id.*

These distinctions between the assessment of costs and the award on the merits form the basis for the decision in *Gettes:*

"Because the award of arbitration costs by the arbitration panel is distinct from the merits of the malpractice claim in arbitration, any review and reallocation of arbitration costs cannot automatically follow the result of the malpractice action in the circuit court, even if that action is tried nonjury.  For these reasons we hold that for purposes of judicial review of a panel's allocation of costs, an adverse allocation of costs should be treated under the Act as an award, separate from the determination of the merits of the malpractice claim."

*Id.* at 679–80, 584 A.2d at 693 (footnote omitted).  No analogous distinction reasonably can be made to segregate the panel's determination of negligence from its determination of the damages necessary to compensate for that negligence.  One of the fundamental principles of tort law is that damages are an integral element of negligence liability.  *See, e.g., B.N. v. K.K.,* 312 Md. 135, 141, 538 A.2d 1175, 1178 (1988) (traditional elements of a negligence cause of action are a duty, a breach of that duty, causation, and damages).  A determination of damages in a tort action is neither discretionary nor an administrative function and is entirely dependent on the corresponding determination of liability.  Indeed, to evaluate damages fairly, the jury will necessarily be influenced by the very facts underlying the issue of liability.

---

**8.**  In the panel's discretion, costs may be assessed against either the prevailing or the losing party, or apportioned between them.  *Tabler v. Medical Mut. Liab. Ins.,* 301 Md. 189, 200, 482 A.2d 873, 879 (1984).  In certain circumstances, even the administrative director of the HCAO "may rule on all issues of law arising prior to hearing that are not dispositive of the case and shall include the assessment of costs."  § 3–2A–05(a)(2).

Finally, *Gettes* does not engage in the statutory reconstruction advocated by the Crawfords. *Gettes'* construction of "an award" to mean either the allocation of costs or the award on the merits (liability and damages) was entirely consistent with the language of the Act. The Act's distinctions between "assessment of costs" and "determinations" on the merits strongly indicate that the General Assembly perceived an "award of costs" as a separable award that bears no relationship to the "award on the merits." *Compare* § 3–2A–05(f) (subtitled *"Assessment of costs"*) with § 3–2A–05(e) (subtitled *"Determinations"*). The natural and probable conclusion underlying these provisions is that the assessment of costs is a discretionary function of the health claims arbitration panel that does not depend on or relate to the substantive award on the merits. Accordingly, if the rationale of *Gettes* has any application to the instant case, it supports the conclusion that the Crawfords may not reject only the damages determination of an arbitration award because, in contrast to allocations of administrative costs, there is no statutory basis for concluding that the arbitration panel's determination of damages is a separable award independent of its liability determination.

The Crawfords also cite dicta in several other cases as additional support for the contention that the rejection of damages only is allowed. For example, in *Osheroff v. Chestnut Lodge*, 62 Md.App. 519, 490 A.2d 720, *cert. denied*, 304 Md. 163, 497 A.2d 1163 (1985), the Court of Special Appeals stated that "[o]nce the arbitration process has concluded, any party to the proceeding may, for any reason, reject the panel's determination of liability, damages, or both, and invoke court review." *Id.* at 523, 490 A.2d at 722. As we noted in *Gettes,* however, *Osheroff* did not reach or analyze this question.[9] *See Gettes,* 321 Md. at 680 n. 3, 584 A.2d at 693 n. 3.

---

**9.** The issue in *Osheroff* was whether the appellant substantially complied with the procedural requirements for rejection of the arbitration award. The *Osheroff* court held that appellant's pleadings contained

Neither does *Hahn v. Suburban Hosp. Ass'n,* 54 Md.App. 685, 461 A.2d 7 (1983), provide any support whatsoever for the Crawfords' position. *Hahn* involved "the sufficiency of evidence necessary to rebut the statutory presumption of correctness of an arbitration award." *Id.* at 686, 461 A.2d at 8. As Judge McCullough observed below, the only reference to separating the damages and liability determinations of the panel appears in the syllabus of the case that precedes the published opinion. Like *Osheroff, Hahn* neither decides, suggests, nor analyzes whether a party may limit its rejection to the panel's damage determination alone.

Finally, our comment in *Su v. Weaver,* 313 Md. 370, 380, 545 A.2d 692, 697 (1988), "that there may be multiple issues of liability ... is more consistent with the purpose of the Act," merely explains our holding that the panel's award may include multiple determinations on alternative theories of liability advanced by a claimant.[10] *Su* did not mention or decide the issue presented here.

## C.

The trial court rested its decision to strike the Crawfords' original notice and complaint upon its conclusion that neither the Act nor the case law provided for rejection of "only the damages part of the arbitration award." That ruling is entirely consistent with the express purposes of the Act.

When adopted, the Act was intended to hasten determination of medical malpractice claims, resulting in reduced costs and an improved system of justice. In adopting the

"all of the essential elements of a viable declaration" for purposes of challenging the arbitration award. *Id.* at 526, 490 A.2d at 723. In so doing, the Court of Special Appeals looked to the substance of the filed pleadings and applied the liberal policy favoring amendments "so that causes of action may be heard on the merits." *Id.*

10. *Su* concerned issues of liability involving diagnosis, surgical treatment, and follow-up care, upon which the panel specifically delineated their findings.

Act, the Legislature clearly anticipated that cost and time savings would result if parties frequently accepted the panel determination, either as the final decision or as the basis for payment. *See* K. Quinn, *The Health Care Malpractice Claims Statute: Maryland's Response to the Medical Malpractice Crisis,* 10 U.Balt.L.Rev. 74, 93–94 (1980). The Act's presumption that the arbitration award is correct is specifically intended to deter rejection of panel decisions. *See* § 3–2A–06(d); J. MacAlister & A. Scanlan, Jr., *Health Claims Arbitration in Maryland: The Experiment Has Failed,* 14 U.Balt.L.Rev. 481, 501–02 (1985).

Permitting rejection of damages alone, however, would have the opposite effect. If a plaintiff may reject only the damage portion of the award, then defendants will likely reject every panel determination or risk losing the right to a judicial determination of their liability. If rejection becomes matter of course, and court action routine, there is no prospect of achieving the Act's fundamental purpose of more economical justice.

Moreover, actions to nullify the award by all parties to a health claims arbitration would become routine in medical malpractice cases because the Act contains no provisions for "cross-rejection" similar to the "cross-appeals" available pursuant to Maryland Rule 8–202(e). In circumstances such as this case, when the claimant obtains a favorable determination of liability, but is dissatisfied with the damage determination, the claimant must now weigh the risks of retrying liability, albeit aided by the presumption of correctness of the award, against the possibility of obtaining more damages. If the claimant is permitted to reject only damages, however, the incentive to accept the amount of the arbitration award is dramatically diminished, given that at trial, liability would be a certainty, and not merely presumed correct. Thus, "the rule urged by [the Crawfords] encourages resort to the courts by providing a claimant with an unfair advantage." *Su v. Weaver,* 313 Md. at 381, 545 A.2d at 697. With no risk of an adverse jury verdict on liability, rejection of damages by the claimant becomes a certainty

and settlement resulting from the arbitration award a rarity. These consequences defeat the primary purpose of the Act: to reduce costs by creating a reliable and acceptable alternative to a medical malpractice action in court.

In addition, the impact of parsing the award into separate portions of liability and damages would be unwieldy and expensive. If the claimant is allowed to reject only the damage determination of the arbitration award, the health care provider must either reject the award as a matter of course or weigh the risks of waiting to see whether and what the claimant rejects. Under the latter circumstances, the health care provider would be required to post an attorney at the courthouse door on the 30th day after the award is served on the parties to ensure that, if the claimant rejects only the damage portion of the award, the health care provider also may reject the panel's determination of liability. Surely the Act does not contemplate such an unworkable and costly result.

In conclusion, the trial court properly applied the Act and preserved all parties' rights to a judicial determination of liability and damages on the merits. This ruling not only satisfies justiciability and adversariness requirements, but also preserves and promotes the General Assembly's goal of establishing a reliable and economical system for resolution of malpractice claims.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED, WITH COSTS.

# PETITIONS FOR WRIT OF CERTIORARI AND DISMISSALS OF APPEALS

September Term, 1991

---

604 A.2d 444

## PETITIONS FOR WRIT OF CERTIORARI

### *Decided April 9, 1992*

Baltimore Sun v. Thanos, Pet. Docket No. 647—denied. Pending in the Court of Special Appeals (PHC No. 4, 1992 Term).

Baseline Software v. Sovero Associates, Pet. Docket No. 603—denied. Opinion (No. 279, 1991 Term, Court of Special Appeals) unreported.

Black v. Fox Hills, Pet. Docket No. 607—denied. Judge McAuliffe did not participate in the consideration of this case. Reported below: 90 Md.App. 75, 599 A.2d 1228.

Bruce, Ronald v. State, Pet. Docket No. 610—denied. Opinion (No. 393, 1991 Term, Court of Special Appeals) unreported.

Burman, Allah v. State, Pet. Docket No. 578—denied. Opinion (No. 401, 1991 Term, Court of Special Appeals) unreported.

Bynum, Hezekiah Michael v. State, Pet. Docket No. 605—denied. Opinion (No. 154, 1991 Term, Court of Special Appeals) unreported.

Coleman, Michael Anthony v. State, Pet. Docket No. 614—denied. Opinion (No. 492, 1991 Term, Court of Special Appeals) unreported.

Dykes, Jon Carlton v. State, Pet. Docket No. 596—denied. Opinion (No. 336, 1991 Term, Court of Special Appeals) unreported.

Fleetwood v. Colodsen, Pet. Docket No. 552—denied. Opinion (No. 1827, 1990 Term, Court of Special Appeals) unreported.

Goodman v. Janson Homes, Pet. Docket No. 612—denied. Opinion (No. 262, 1991 Term, Court of Special Appeals) unreported.

Goroum v. Rynarzewski, Pet. Docket No. 620—denied. Reported below: 89 Md.App. 676, 599 A.2d 843.

Harris, Brian Edward v. State, Pet. Docket No. 615—denied. Opinion (No. 361, 1991 Term, Court of Special Appeals) unreported.

Homer v. Long, Pet. Docket No. 617—denied. Reported below: 90 Md.App. 1, 599 A.2d 1193.

Kungle v. Continental Realty Corp., Pet. Docket No. 489—denied. Transferred from Court of Special Appeals (No. 1427, 1991 Term).

Manuel, Tanya Denise v. State, Pet. Docket No. 606—denied. Opinion (No. 256, 1991 Term, Court of Special Appeals) unreported.

Mattingly, J. Thomas v. State, Pet. Docket No. 608—denied. Reported below: 89 Md.App. 187, 597 A.2d 1027.

Montgomery County and Prince George's County Tax Assessors and Clerical Staff v. Department of Assessments and Taxation, Pet. Docket No. 613—denied. Pending in the Court of Special Appeals (PHC No. 961, 1991 Term).

*Decided April 9, 1992*—Continued

Neal v. Brigham, Pet. Docket No. 601—denied. Opinion (No. 439, 1991 Term, Court of Special Appeals) unreported.

Short, Harvey P. v. State, Pet. Docket No. 599—denied. Opinion (No. 497, 1991 Term, Court of Special Appeals) unreported.

Small v. Thanos, Pet. Docket No. 647—denied. Pending in the Court of Special Appeals (PHC No. 4, 1992 Term).

Talbot, Melvin J. v. State, Pet. Docket No. 619—denied. Opinion (No. 667, 1991 Term, Court of Special Appeals) unreported.

Weisgal, Lawrence David v. State, Pet. Docket No. 604—denied. Opinion (Nos. 1240, 1990 Term and 102, 1991 Term, Court of Special Appeals) unreported.

Zutell, Joseph M. v. State, Pet. Docket No. 591—denied. (No. 62331, Circuit Court for Montgomery County).