**MEDLANTIC LONG TERM CARE CORP., et al., Appellants,**

v.

**Helen SMITH, Personal Representative of the ESTATE OF Elizabeth FERGUSON, Appellee.**

No. 99–CV–78.

District of Columbia Court of Appeals.

Argued Feb. 16, 2000.
Decided Feb. 7, 2002.

Albert D. Brault, with whom Regina A. Casey, Washington, DC, was on the brief, for appellants.

John J. Sellinger, with whom Brian J. Gillette, Silver Spring, MD, was on the brief, for appellee.

Before RUIZ and WASHINGTON, Associate Judges, and KING, Senior Judge.

RUIZ, Associate Judge:

Helen Smith, the personal representative of the estate of Elizabeth Ferguson, brought a medical malpractice survival action seeking compensatory and punitive damages alleging that the nursing and medical care provided to Ms. Ferguson while she was a patient at Medlantic Manor in Silver Spring, Maryland, was below the standard of care and proximately caused her death in the District of Columbia. Appellants filed a motion to dismiss on the grounds of *forum non conveniens*,[1] which was denied "for the reasons stated in plaintiff's opposition." Appellants claim that the denial of their motion was an abuse of discretion because the trial court did not consider the interest of the state of Maryland in deciding an action that involves the standard of conduct to be ex-

---

[1]. Before the trial court, defendants also claimed that the complaint should be dismissed for lack of personal jurisdiction and failure to state a claim on which relief can be granted. These alternative grounds for dismissal are not before us in this interlocutory appeal. *See infra,* note 3.

pected of Maryland health care practitioners in treating a patient residing in a Maryland nursing home. Appellants further argue that the complaint should be dismissed because they should not have to defend a lawsuit in the District of Columbia, when the personal representative also filed a wrongful death action in Maryland against them, which involves the same case facts and alleged negligence. We affirm.

## Statement of Facts

Elizabeth Ferguson died at D.C. General Hospital on June 2, 1997. For many years and until her death, she maintained a residence at 1706 T Street, NW, Washington, D.C. During the last year of her life, from July 1, 1996 to May 21, 1997, Ms. Ferguson resided at Medlantic Manor, a nursing home licensed to provide non-acute in-patient care in Silver Spring, Maryland. Appellant Medlantic Long Term Care Corporation ("MLTC"), which operates Medlantic Manor, is authorized to do business in the District of Columbia and operates a nursing home in the District as well as in Maryland. Appellant Medlantic Healthcare Group ("MHCG"), the shareholder and parent company of MLTC, is a Delaware corporation, with its corporate headquarters in the District of Columbia.

The complaint alleges that Ferguson was admitted to Medlantic Manor with a medical history of "a cerebrovascular accident [stroke] with left hemiparesis [paralysis on one side] and mental changes, diabetes mellitis [sugar diabetes], hypertension, and hyperthyroidism." The complaint further alleges she also had "a slight left knee flexure contracture [abnormal permanent shortening or withering of a muscle] and

complete range of motion in her other three extremities, and was void of decubitus ulcers [bed sores] or other skin lesions."

On May 22, 1997, after eleven months at Medlantic Manor, Ms. Ferguson was removed from the Maryland Nursing Home. The complaint alleges that, at that time, she had "profound flexion contractures of all four extremities and multiple, large, grade IV decubitus ulcers." Ms. Ferguson died eleven days later in the District of Columbia from septic shock [a severe infection causing drop in blood pressure] and metabolic acidosis [abnormally low bicarbonate in the body through deprivation or loss of fluids (*e.g.*, through diarrhea, vomiting) ], secondary to decubitus ulcers.

A petition for probate was filed with the Superior Court for the District of Columbia, and on February 26, 1998, Helen Smith was appointed personal representative of the estate of Elizabeth Ferguson. She filed a wrongful death action on behalf of Ms. Ferguson's two dependent grandchildren in Maryland and this survival action on behalf of the Estate in Superior Court.

## Analysis

■ The authority to dismiss a case for *forum non conveniens* "in the interest of substantial justice" is conferred by statute. *See* D.C.Code § 13–425 (2001).[2] The decision whether to dismiss an action for *forum non conveniens* is entrusted to the sound discretion of the trial court and will be reversed on appeal only upon a clear showing of abuse of discretion. *See Coulibaly v. Malaquias*, 728 A.2d 595, 601 (D.C. 1999).[3] We have interpreted that standard

2. The statute provides:

When any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just.
D.C.Code § 13–425 (2001).

3. The denial of a motion to dismiss on the ground of *forum non conveniens* is an appeal-

to mean that "first, we apply 'close scrutiny' to the specific factors identified and evaluated by the trial court; once we are satisfied that the trial court took the proper factors into account, we adopt a deferential approach in determining whether the trial court's decision falls within the 'broad discretion' committed to it." *Smith v. Alder Branch Realty Ltd.*, 684 A.2d 1284, 1287 (D.C.1996).

*Burden of Proof*

 We begin with the proposition that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Coulibaly*, 728 A.2d at 601 (quoting *Mills v. Aetna Fire Underwriters Ins. Co.*, 511 A.2d 8, 10 (D.C.1986); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). Thus, in most cases, a defendant who invokes the doctrine of *forum non conveniens* bears the burden of demonstrating why dismissal is warranted. *See Coulibaly*, 728 A.2d at 601. Here, appellants seek to shift the burden to appellee to justify bringing suit in the District of Columbia on the ground that the District is a "clearly inappropriate forum," citing *Ott v. Kaiser–Georgetown Cmty. Health Plan, Inc.*, 689 F.Supp. 9, 11 (D.D.C.1988) ("plaintiff must show some reasonable justification for bringing suit the inappropriate forum rather than in a forum that has more significant connections with the defendant or the res, act, or event in suit").

 We have agreed with the reasoning and result in *Ott* in *Ussery v. Kaiser Found. Health Plan*, 647 A.2d 778, 781 (D.C.1994), but we did not there adopt, and have not adopted, the burden-shifting language cited by appellants. Nor do we

now. To the contrary, although we have rejected any per se rule which would prohibit the application of the doctrine of *forum non conveniens* whenever one of the parties is a District of Columbia resident, *see Carr v. Bio–Medical Applications of Wash., Inc.*, 366 A.2d 1089, 1093 (D.C. 1976) ("[s]uch an immutable rule is unwarranted and would severely undermine the trial court's broad discretion in such matters"), plaintiff's residency in the District is "an extremely significant factor favoring the exercise of jurisdiction by the courts of the District." *Jimmerson v. Kaiser Found. Health Plan*, 663 A.2d 540, 544 (D.C.1995). Only where neither party resides in the District and the plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of action, does the burden normally allocated to the defendant to demonstrate why dismissal is warranted for *forum non conveniens* shift to the plaintiff. *See Neale v. Arshad*, 683 A.2d 160, 163 (D.C.1996); *accord Dunkwu v. Neville*, 575 A.2d 293, 295 (D.C.1990); *Mills*, 511 A.2d at 10–11.

 The concept of "residence" in *forum non conveniens* analysis is used to indicate the nature of the claimant's connection with the forum. In a survival action, the personal representative "has the same standing" as the decedent had "immediately prior to death." D.C.Code § 20–701(c) (2001). Although at the time of the alleged negligence Ms. Ferguson, the decedent, was temporarily living at a nursing home in Maryland, she died in the District of Columbia and was a *domiciliary* of the District, as evidenced by the fact that she maintained a residence at 1706 T Street, NW, Washington, D.C., and

able order because once there has been a trial on the merits, "the very inconvenience which the doctrine seeks to avoid will have already

occurred." *Crown Oil & Wax Co. of Delaware v. Safeco Ins. Co.*, 429 A.2d 1376, 1380 (D.C. 1981).

that the Superior Court appointed a personal representative of her Estate in response to a petition for probate in the District. "[A] domicile once existing continues until another is acquired." *Heater v. Heater,* 155 A.2d 523, 524 (D.C.1959). In order for domicile to change, the person must be physically present in a new jurisdiction, and have the intention to change residence permanently to that new jurisdiction. *See id.* On the face of the record, the domicile of Ms. Ferguson never changed from the District of Columbia.

In *Carr,* we affirmed the trial judge's dismissal of a complaint brought in Superior Court by a surviving spouse against Maryland residents. In that case, the plaintiff was a District of Columbia resident; the residency of her husband was not disclosed, but he died as a result of medical treatment received in Maryland; the physicians were residents of Maryland and licensed to practice in Maryland; the professional association comprised by the physicians was a Maryland corporation; and the owners of the medical facility were qualified to do business only in Maryland.

We distinguish the case at bar from *Carr* because here, as a domiciliary, decedent has a connection with this forum stronger than if she were merely a resident. Therefore, the fact that she was temporarily living in Maryland during the alleged negligence is not particularly relevant—she will certainly not get less consideration as a domiciliary than as a resident. Further, unlike in *Carr,* the defendants are corporations which conduct significant business in the District as well as in Maryland and MHCG has its principal place of business in the District. Even though the cause of action arose from acts that occurred in Maryland, the burden does not shift to plain-

tiff because this is not a case "where there is virtually no link to this jurisdiction." *Coulibaly,* 728 A.2d at 604. Therefore, we evaluate the parties' allegations in the light most favorable to the nonmoving party; in this case, appellee.[4] *See id.*

*Reviewing the Gulf Oil Factors*

Two categories of factors are considered in *forum non conveniens* cases, the private interests of the litigants, and the public interest of the forum. *See Coulibaly,* 728 A.2d at 599 (citing *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. 839). Factors relevant to the private interests of the litigants are:

1) the relative ease of access to sources of proof; 2) the availability of compulsory process for attendance of unwilling witnesses; 3) the cost of obtaining attendance of willing witnesses; 4) the possibility of viewing premises, if view would be appropriate to the action; 5) all other practical problems concerning the ease, expedition and expense of the trial; 6) the enforceability of a judgment once obtained; 7) evidence that the plaintiff attempted to vex, harass or oppress the defendant by his choice of forum, and 8) the relative advantages and obstacles to fair trial.

*Id.* at 600 (quoting *Mills,* 511 A.2d at 10); *accord Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. 839. The public interest factors are:

1) administrative difficulties caused by local court dockets congested with foreign litigation; 2) the local interest in having localized controversies decided at home; 3) the unfairness of imposing the burden of jury duty on the citizens of a forum having no relation to the litigation, and 4) the avoidance of unnecessary problems in conflict of laws and in

---

4. We do not know how the trial court allocated the burden, since in its order the court merely states that it denied the motion "for the reasons stated in plaintiff's opposition."

the interpretation of the laws of another jurisdiction.

*Coulibaly,* 728 A.2d at 601 (quoting *Mills,* 511 A.2d at 10).

 The trial court was required to review each of the applicable *Gulf Oil* factors and to balance the private and public interests in its analysis. *See Coulibaly,* 728 A.2d at 604 (citing *Mills,* 511 A.2d at 12). In reviewing the trial court's order, we look to the factors considered to determine whether it failed to "consider a relevant factor, relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Id.* at 603.

In plaintiff's opposition, relied upon by the trial court, appellee discussed only three of the *Gulf Oil* factors. First, that plaintiff's residence in the District is a "private factor that is a formidable hurdle to dismissal." Second, that D.C. law would apply to the case, and, third, that the fact that plaintiff first filed a wrongful death suit in Maryland is not relevant since she could not have filed it in the District of Columbia at the time. Consideration of only these factors does not comprise a complete *Gulf Oil* analysis, and a remand ordinarily would be proper to permit the trial court's exercise of discretion based on all relevant factors. However, in previous cases where the trial court conducted an incomplete or partially erroneous analysis, we have noted that this court may conduct the analysis based on the facts of record if there is but one permissible conclusion. *See Coulibaly,* 728 A.2d at 605. In this case, we have sufficient clear facts on the record to follow the same procedure. We review first the private and then the public *Gulf Oil* factors.

Most of the private *Gulf Oil* factors can be summarized as dealing with the practicalities of trial in the chosen jurisdiction, *e.g.,* whether the court will have available to it the evidence and witnesses necessary to try the case. The parties and the events in this case are all located within a few miles of the District, so there is not any imbalance of "convenience" to either party which would decide the issue. The fact witnesses to the alleged negligence work in Silver Spring, Maryland, within the subpoena power of the Superior Court, should it be necessary to compel their testimony. Both defendants do business in the District. There are no allegations that a judgment obtained in the District would not be enforceable against defendants, nor is there any allegation that the plaintiff attempted to vex, harass, or oppress the defendants by her choice of forum.

Where the plaintiff's choice of forum is between the District of Columbia and one of the counties in the Washington, D.C. metropolitan area, as here, the public interest factors predominate for the obvious reason that the relative ease or difficulty in getting to a D.C. court and a metropolitan court outside D.C. is usually the same. As the *Carr* court explained:

> [T]he inconvenience to the parties and witnesses of long distance travel—the factor regarded as of major importance by federal circuits in other jurisdictions, is not the only ground for dismissing an action in the Superior Court. As the county seats in such adjacent areas as Arlington and Fairfax, Virginia, or Montgomery and Prince George's, Maryland, are all within a 20 mile radius of the District, travel problems pale into insignificance as compared to such factors as the public interest in reducing the volume of difficult cases on court calendars already overcrowded.

*Id.* at 1092 (quoting *Frost v. Peoples Drug Store, Inc.,* 327 A.2d 810, 813 (D.C.1974)).

Thus, we turn to consider the public interest factors. The first public interest factor concerns potential administrative difficulties caused by local court dockets congested with foreign litigation. While this is a legitimate problem for the District as with most urban courts, this litigation cannot fairly be characterized as "foreign" due to the decedent's domicile in the District.

The second public factor, the local interest in having localized controversies decided at home, should be considered in the context of significant integration of the city of Washington with its neighboring counties. It is not atypical for a resident of the District to seek health care services across the state line in Maryland, and vice versa. Appellants argue that their liability is the "*sole* issue in this case" and that the interest of the state of Maryland in deciding an action involving the liability of its health care practitioners in treating patients in Maryland is far greater than any tie with the District. That argument is incorrect, however, because this controversy cannot be construed as a conflict involving only Maryland litigants. Where the decedent was domiciled in the District and died at D.C. General Hospital from complications alleged to have been caused by appellants' negligent care in Maryland, the District of Columbia, no less than the state of Maryland, has a significant interest in how resident corporations conduct business, especially where, as here, defendants also provide similar medical care in the District and the health and safety of a domiciliary are at issue.

As the controversy is affected with D.C. as well as Maryland interests, we must evaluate the contacts with the two jurisdictions in the light most favorable to the nonmoving party. Maryland's interest is embodied in its law favoring preliminary arbitration in malpractice claims against health care practitioners.[5] Maryland's interest in resolving the underlying claim through arbitration is unlikely to have been satisfied, however, in light of the fact that the personal representative had a court action for wrongful death pending against appellants in Maryland.[6] More-

---

**5.** Under Maryland law, actions against a health care provider, including a nursing home facility, for more than $5000 in damages are subject to Maryland's Health Care Malpractice Claims Act. *See* MD.CODE ANN., CTS. & JUD PROC. §§ 3–2A–01 to 3–2A–09 (2001). Enacted in 1976, the statute was a response to the Maryland General Assembly's concern about a crisis in malpractice insurance. *See Bovey v. Executive Dir.*, 292 Md. 640, 441 A.2d 333, 335 (1982). The purpose was to encourage the resolution of claims by arbitration and minimize the number brought to trial in the traditional tort system, reducing their number and cost and, thereby, the cost of insurance. *See Carrion v. Linzey*, 342 Md. 266, 675 A.2d 527, 531 (1996). In spite of this strong policy in favor of arbitration, the arbitral award is not binding. Either party may reject it for any reason, and may elect to have the case tried by a jury, *see* §§ 3–2A–06A & –06-B, although success upon judicial review is more difficult for the person who lost before the arbitration panel. *See Carrion*, 675

A.2d at 535. An injured party may not reject only the damages awarded by an arbitration panel and appeal only that part; a party must reject all or none of the award. *See Crawford v. Leahy*, 326 Md. 160, 604 A.2d 73 (1992).

The mandatory arbitration requirement creates a condition precedent to the institution of a court action, *see Tranen v. Aziz*, 304 Md. 605, 500 A.2d 636, 639 (1985), and has been likened to the requirement to exhaust administrative remedies, *see Oxtoby v. McGowan*, 294 Md. 83, 447 A.2d 860, (1982). "[T]he action is essentially a separate common law tort action with the added element that the arbitration process must be complete." *Crawford*, 604 A.2d at 75.

**6.** Maryland also limits recovery in personal injury cases by limiting the amount of "noneconomic" damages a plaintiff may collect in a survival or wrongful death action to $530,000 where the cause of action, as in the case at bar, arose on or after October 1, 1996,

over, to the extent Maryland has an overriding policy interest in the litigation, which is different from the District, conflict of law analysis can resolve the issue.

■■■ Appellee argued in her opposition to the motion to dismiss that D.C. law should apply, and appellant argued that Maryland law is applicable. We review questions of choice of law *de novo*. *See District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C.1995); *Atkins v. Industrial Telecomm. Ass'n.*, 660 A.2d 885, 888 (D.C. 1995). Although the trial court generally adopted appellee's position, it did not specifically rule that District of Columbia law would apply to this case. We decline to decide the matter now because even if this case is tried in the District and, under our choice of law rules, Maryland law were found to apply, "[o]ur courts are not unfamiliar with applying the laws of other jurisdictions, especially Maryland upon whose common law our common law is based, and therefore it may not be inappropriate to require them to do so." *Jimmerson*, 663 A.2d at 544 (footnote omitted).

Finally, we consider the unfairness of imposing the burden of jury duty on the citizens of a forum having no relation to the litigation.[7] It is easily decided in favor of appellee, as the plaintiff was a domiciliary of the District of Columbia, and the defendants are present and doing business in D.C. Thus, it is not unreasonable to impose jury service on District citizens to decide this case. *See Jimmerson*, 663 A.2d at 547.

It bears repeating that the ultimate question in a *forum non conveniens* analysis is not whether the District is the *best* forum, but "whether the District has so little to do with this case that its courts should decline to hear it." *Jimmerson*, 663 A.2d at 543 (quoting *Jenkins v. Smith*, 535 A.2d 1367, 1370 (D.C.1987)). Although some of the facts in this case have significant contacts with Maryland, they do not so outweigh those with the District that we must decline to hear the case.

*Parallel Litigation*

■■■ Appellants claim that the personal representative should not be able to maintain separate suits in the District of Columbia and in Maryland based on the same allegations. Although there undoubtedly will be some overlap between the two cases, they are not identical. The complaint in the District of Columbia is a survival action on behalf of the Estate, whereas the complaint in Maryland is a wrongful death action on behalf of the decedent's two grandsons who are domiciled in Maryland. The facts on which the two lawsuits are based are the same, and so the witnesses and evidence also are likely to be the same on the question of

---

and before October 1, 1997. *See* MD.CODE ANN., CTS. & JUD. PROC. § 11–108(b) (2001). Non-economic damages in a personal injury action include "pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, or other nonpecuniary injury." § 11–108(a)(2)(i). Punitive damages are not limited by this rule. *See* § 11–108(a)(2)(ii). In a wrongful death action in which there are two or more claimants or beneficiaries, as in plaintiff's Maryland case on behalf of decedent's two grandchildren, an award for non-economic damages may not exceed 150% of $530,000, regardless of the number of claimants. *See id.* The caps are not limited to actions against health care providers. Economic damages are not capped, but the finder of fact must itemize the different types of damages by category. *See* §§ 11–109(b) (personal injury litigation) and 3–2A–05 (e) (arbitrations involving health care providers).

The District of Columbia also recognizes survival actions, *see* D.C.Code § 12–101 (2001), and wrongful death actions, *see* D.C.Code § 16–2701 (2001), but does not limit recovery in personal injury actions.

7. Here, plaintiff requested a jury trial.

negligence. The damages claims are not the same, however, and the witnesses and evidence as to damages will be very different. Moreover, in her opposition to defendant's motion, appellee contended that she could not have brought the wrongful death action in the District because the District of Columbia statute of limitations had expired.[8] If appellants were primarily concerned with consolidating the two actions, they could waive any applicable statute of limitations bar as a defense and permit appellee to file the wrongful death action in the District.[9] *Cf. Ussery*, 647 A.2d at 782 (noting that separate actions in Maryland and the District "would be seriously inconvenient when all the likely defendants were amenable to suit only in the Maryland courts").

### Conclusion

Plaintiff in this case could have filed this survival action either in Maryland or in the District of Columbia, but having chosen to file here, her choice was entitled to preference. On the facts of record, we agree with the court's ruling to entertain the suit.

*Affirmed.*

---

8. Appellee argued that the one-year statute of limitations in D.C.Code § 16–2702 precluded her from filing a wrongful death action in the District of Columbia. Appellants do not argue otherwise. We note that, by its terms, the statute of limitations prescribed in § 16–2702 applies to actions brought pursuant to the District of Columbia wrongful death statute, D.C.Code § 16–2701, which, in turn, applies only where "injury" is "done or happening within the limits of the District." D.C.Code § 16–2701 (2001). For present purposes it is unnecessary to determine whether either statutory provision is applicable to this case.

9. Alternatively, the litigation in Maryland and in the District of Columbia could be organized so that the issues common to both are tried in only one forum with preclusive effect in the other.